**The BLACK & DECKER CORPORATION, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 92–1188.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1992.

Decided Feb. 3, 1993.

---

Herbert Odell, Zapruder & Odell, Berwyn, PA, argued (Joel C. Weiss, Zapruder & Odell, Berwyn, PA, on brief), for petitioner-appellant.

Frank Phillip Cihlar, Tax Div., U.S. Dept. of Justice, Washington, DC (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Gilbert S. Rothenberg, Tax Div. U.S. Dept. of Justice, Washington, DC, on brief), for respondent-appellee.

Before ERVIN, Chief Judge, LUTTIG, Circuit Judge, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

The Black & Decker Corporation, a domestic corporation with principal offices in Towson, Maryland, suffered a loss on its foreign investment in Nippon Black & Decker ("NBD"), during its 1981 tax year when NBD stock became worthless. Black & Decker attempted to offset this loss against its taxable income in the form of a foreign tax credit. In 1988 the Commissioner of Internal Revenue mailed Black & Decker a notice of deficiency in its corporate income tax paid. The deficiency resulted from the Commissioner's upward adjustment of Black & Decker's net foreign-source income for the taxable year ending September 27, 1981, by the sum of $7,883,-137. The Commissioner imposed the adjustment after determining that Black & Decker had misallocated its 1981 worthless-stock loss from the NBD investment.

Black & Decker sought a redetermination of the tax deficiency before the United States Tax Court, disagreeing with the Commissioner's allocation of the loss solely against Black & Decker's foreign-source dividend income. The tax court upheld the Commissioner's finding of a deficiency, and Black & Decker appealed. We affirm the tax court's decision.

I

In the early 1970s, Black & Decker, a manufacturer and distributor of power tools, became concerned that the Japanese power-tool market posed a threat to its worldwide competitiveness. To combat this fear, Black & Decker formed NBD, a wholly-owned foreign subsidiary corporation, to manufacture, purchase, sell, import, export, and service power tools in Japan. Black & Decker's business plan, which it presented to Japan's Ministry of International Trade and Industry in order to gain approval for the creation of NBD, projected that NBD would garner a fifteen percent share in the Japanese power-tool market within the first five years of its operation. Over the course of the next seven years, Black & Decker made a total investment of $7,883,137 in NBD.

Black & Decker created and operated NBD for two reasons: to protect its worldwide market share by competing aggressively with Japanese power-tool manufacturers in their home market, and to make a profit on its investment after establishing NBD's Japanese market share. The venture failed, and NBD experienced losses for all but two years of its operations and never paid dividends to Black & Decker. Although Black & Decker recorded earnings from its transactions with NBD, it never received any direct return on its investment. In 1981 Black & Decker suspended NBD's operations and liquidated all its assets. This transaction resulted in a worthless-stock loss amounting to $7,883,-137, Black & Decker's total investment in NBD.

Neither party contests the validity of the claimed loss. The sole issue before us is whether Black & Decker must allocate the entire worthless-stock loss from its investment in NBD to foreign-source dividend income. Black & Decker has suggested three methods of allocating the worthless-stock loss: (1) wholly against United States-source income; (2) apportioned pro rata between foreign-source and United States-source income; or (3) wholly against gross income Black & Decker received directly from NBD. The tax court rejected each of these suggestions and held that Black & Decker must allocate the worthless-stock loss entirely against Black & Decker's foreign-source dividend income, the class of income that the court felt best represented expected returns from the NBD investment. Black & Decker appeals only the tax court's rejection of the second proposed method of allocation.

II

The Internal Revenue Code of 1954 ("the Code")[1] provided Black & Decker the opportunity to claim a foreign tax credit against its domestic tax liability in 1981. 26 U.S.C. § 901(a). The credit could equal the total income, war profits, and excess profits taxes paid to any foreign country, id. § 901(b)(1), but could not exceed the proportion of net foreign-source income to total taxable income, id. § 904(a). Therefore, reductions in Black & Decker's foreign-source income would decrease its allowable foreign tax credit proportionally.

This limitation required Black & Decker to determine its foreign-source income. Foreign-source income represents net income derived from outside the United States as determined by allocating appropriate expenses, losses, and deductions to the classes of gross income that gave rise to those items. See 26 U.S.C. §§ 861(a); 862(a), (b); 863. We must review the tax court's determination that a worthless-stock loss from a foreign investment represents an expense allocable wholly to the

1. The Internal Revenue Code of 1954 ("the Code") governed the relevant transactions in this dispute; therefore, we will discuss and cite to that act although the Internal Revenue Code of 1986 now supersedes it.

class of gross income, foreign-source dividends.

Congress has authorized the Secretary of the Treasury to prescribe regulations specifying allocation methods for expenses, losses, and deductions derived from domestic and foreign sources. 26 U.S.C. § 863(a). These regulations emphasize the factual relationship between the deduction and a given class of gross income, allowing deductions only against the class of gross income to which the deduction is definitely related. 26 C.F.R. § 1.861–8(b)(1). The relationship need not be contemporaneous; in other words, the deduction may relate to gross income received or accrued in past taxable years or expected in future taxable years although the taxpayer never actually realizes that income. *Id.* § 1.861–8(b)(2). Gross income is classified on an objective basis; if a taxpayer could reasonably expect a particular class to generate gross income, the class can support offsetting deductions. A taxpayer shall consider a deduction definitely related to a hypothetical class of gross income whether or not the taxpayer recognizes "any item of gross income in such class which is received or accrued during the taxable year and whether or not the amount of deductions exceeds the amount of the gross income in such class." *Id.*

The Commissioner and Black & Decker agree that the dissolution of NBD most closely resembles the disposition of a capital asset. When gross income derives from asset ownership and disposition, commensurate and therefore allocable deductions are those the taxpayer incurred as a result of, or incident to, an activity or in connection with the asset from which the class of gross income derives. Losses on asset disposition are

> definitely related and allocable to the class of gross income to which such asset or property ordinarily gives rise in the hands of the taxpayer. Where the nature of gross income generated from the asset or property has varied significantly

over several taxable years of the taxpayer, such class of gross income shall generally be determined by reference to gross income generated from the asset or property during the taxable year or years immediately preceding the sale, exchange, or other disposition of such asset or property.

*Id.* § 1.861–8(e)(7)(i).

A loss from the disposition of an asset may be applied proportionately against more than one class of income when the loss relates to each class definitely. *Id.* § 1.861–8(e)(7)(ii). Typical situations calling for apportionment include disposition of a tangible or intangible asset used both inside and outside the United States.[2] *Id.*

If a deduction does not bear a definite relationship to a given class of gross income, Black & Decker may treat the deduction as definitely related and allocable to all of Black & Decker's gross income, on a pro rata basis. *Id.* § 1.861–8(b)(5). Deductions outlined in the regulations as not definitely related to any gross income are personal interest expense, real estate and sales taxes, medical expenses, charitable contributions, and alimony payments. 26 C.F.R. § 1.861–8(e)(9)(i)–(v).

The redetermination of a tax deficiency involves the application of these legal standards for allocation to factually determined classifications of income. In this case, the parties agree on the tax court's essential findings, but differ over the court's application of the treasury regulations to those facts. Black & Decker argues that the tax court's holding is a conclusion of law reviewable de novo, while the Commissioner argues that the holding hinges on a factual determination and "shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a). We find that the holding involves a mixed question of law and fact, and therefore review it de novo. *Dobson v. Commissioner*, 320 U.S. 489, 500–502, 64 S.Ct. 239, 246–47, 88 L.Ed.

---

**2.** The regulations suggest, for example, that when the class of gross income to which the deduction is allocable consists of royalty income derived from an intangible asset used both inside and outside the United States, the taxpayer may apportion the deduction between domestic- and foreign-source income. *See* 26 C.F.R. § 1.861–8(e)(7)(ii).

248 (1943); *Rawl v. United States*, 778 F.2d 1009, 1014 & n. 9 (4th Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986).

### III

■ Black & Decker offers alternative justifications for worldwide allocation of its worthless-stock loss on a proportional basis: (1) the loss bears a close factual relationship to worldwide income because the NBD investment was geared to enhance worldwide competitiveness; or (2) the loss bears no definite relationship to any one class of gross income and therefore should be apportioned to all income. Black & Decker argues that section 1.861–8(e)(7) of the Treasury Regulations, which deals with the allocation of losses on the sale, exchange, or other disposition of property, is controlling. We reject Black & Decker's proposed allocations on three grounds.

### A

First, Black & Decker properly asserts that section 1.861–8(e)(7) of the regulations controls this dispute. Black & Decker fails, however, to understand how the provision should correctly be applied in the circumstances before us. The section guides allocation of a specific type of loss—one from the sale, exchange, or other disposition of property—to the appropriate class of income. Black & Decker's loss resulted from the devaluation of Black & Decker's equity stock in NBD, an asset disposition. The corollary class of gross income deriving from the NBD stock would be dividends, not the intangible benefits that increased market share in Japan might represent.[3]

In addition, Black & Decker contends that its desire to protect its worldwide market through developing market share in the power-tool market in Japan represents a

worldwide use of its NBD investment. Black & Decker claims that NBD therefore has the international quality of an asset used both inside and outside the United States, so that its liquidation gives rise to apportionable deductions pursuant to 26 C.F.R. § 1.861–8(e)(7)(ii). We reject this contention. Section 1.861–8(e)(7)(ii) recognizes only those *unusual situations when an asset is used and generates income globally*. Black & Decker's argument demonstrates no nexus between its worldwide income and the NBD worthless-stock loss beyond the boost an increased Japanese market share could give to Black & Decker's worldwide competitiveness. Moreover, Black & Decker has identified no worldwide income that its directly attributable to the NBD assets.

### B

■ Second, Black & Decker suggests that the worthless-stock loss is not related to any particular class of income and therefore should be allocated between all classes of income. This argument relies on section 1.861–8(b)(5) of the Treasury Regulations. Section 1.861–8(b)(5) must be read together with section 1.861–8(e)(9), which gives examples of deductions that generally are not definitely related to gross income. The examples in section 1.861–8(e)(9) all represent deductions that are personal in nature; the deductions relate to a taxpayer herself rather than to her assets. Home mortgage interest, taxes on items purchased for personal use, and medical expenditures relate to a taxpayer's nonbusiness activities and do not represent expenses incurred in the production of income. A worthless-stock loss cannot logically be included on this list of personal deductions because it derives from a particular asset capable of income production; therefore, the loss is in fact

---

**3.** Black & Decker contends that looking solely to dividends as a means for offsetting the worthless-stock loss creates a per se dividend rule. Black & Decker suggests that the regulations will be subverted by a rule from this court that requires every loss arising from equity stock ownership necessarily to be offset against a class of dividend income. The interpretation of

the regulations we espouse today falls short of a per se rule and permits the flexibility intended by the regulations. For example, if a taxpayer was in the business of buying and selling equity stock and amassing gains and losses from the stocks' disposition, the losses would be offset against the gains rather than any dividends the shares might produce during ownership.

related to one class of gross income—dividend income.

## C

Finally, Black & Decker challenges the tax court's allocation as one based on "hypothetical income," not actual realized income. Black & Decker draws its actual income argument from 26 C.F.R. § 1.861-8(e)(7)(i), which relates losses to "income to which such asset or property ordinarily gives rise in the hands of the taxpayer." Black & Decker asserts that, since the NBD stock did not give rise to any dividend income, the loss cannot be allocated to this class of income.

■■■ Black & Decker's interpretation would permit tax allocation only to income that Black & Decker has generated and collected, but not to an expectancy of income. This reading of section 1.861-8(e)(7)(i) ignores section 1.861-8(b)(2)'s admonition that an allocation may be made whether or not income has accrued or been received. The absence of recognizable gross income from the class to which the loss bears relation does not mandate allocation to another class of Black & Decker's income. The provision for worldwide income allocation comes into play only when "a deduction does not bear a definite relationship to a class of gross income constituting less than all of gross income." 26 C.F.R. § 1.861-8(b)(5). When a class of gross income exists or could reasonably be expected to exist, any deductions relating to that income must be allocated to it. Accordingly, only those deductions that bear no relation to any class of income will be allocated proportionally to all income.

■■■ Black & Decker's insistence on actual income within a class also contravenes basic principles of regulatory construction. Regulations, like statutes, are interpreted according to canons of construction. Chief among these canons is the mandate that "constructions which render regulatory provisions superfluous are to be avoided." *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir.1976) (citing *Jay v. Boyd*, 351 U.S. 345, 360, 76 S.Ct. 919, 928, 100 L.Ed. 1242 (1956) ("We must read the body of regulations . . . so as to give effect, if possible, to all of its provisions.")). Interpreting the loss allocation provision to require allocation only against actual income would obviate any need for language that approved of allocations against a hypothetical class of income, even though no income was received. *See* 26 C.F.R. §§ 1.861-8(b)(1) & (2). The tax court recognized this incongruity by interpreting the full text of the regulations, not just isolated provisions.

## IV

Our reading of the applicable regulations and review of the tax court's reasoning suggest no support for Black & Decker's contentions. Accordingly, we affirm.

AFFIRMED.