# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-4406

James E. Savage, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued July 28, 2010            Decided January 4, 2011)

*David J. Lowenstein,* of Richmond, Virginia, with whom *Daniel G. Krasnegor*, of Charlottesville, Virginia, was on the brief for the appellant.

*Catherine A. Black,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, D.C., was on the brief for the appellee.

Before KASOLD, *Chief Judge*,[1] and HAGEL and DAVIS, *Judges*.

HAGEL, *Judge*: James E. Savage appeals through counsel that part of an October 22, 2009, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability rating for bilateral hearing loss in excess of 10% between November 14, 2002, and March 17, 2009, and in excess of 20% from March 18, 2009.[2]  The matter was referred to a panel of the Court to resolve whether VA has a duty to seek clarification of private medical examinations or VA progress notes.  The Court issued its opinion on November 3, 2010, and the Secretary moved for reconsideration of that decision on November 23, 2010.  The Court will grant the Secretary's motion, withdraw the

---

[1] Judge Kasold became Chief Judge on August 6, 2010.

[2] The Board also dismissed Mr. Savage's appeal of entitlement to a disability rating in excess of 10% for another disability.  Mr. Savage makes no argument regarding that portion of the Board's decision, and the Court therefore deems any appeal of that claim abandoned.  *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (holding that issues or claims not argued on appeal are considered abandoned).

November 3, 2010, opinion, and issue this opinion in its stead. The Court concludes that, in some circumstances, VA does have a duty to return for clarification unclear or insufficient private examination reports or VA progress notes, or the Board must explain why such clarification is not needed. Because the Board failed to seek clarification of the private examination reports and VA progress notes or explain why such clarification was not necessary under the circumstances in this case, the Court will vacate the October 2009 Board decision and remand the matter for further development and readjudication consistent with this decision.

## I. FACTS

Mr. Savage served on active duty in the U.S. Army from March 1953 to February 1955. In October 1975, Mr. Savage was assigned a noncompensable disability rating for bilateral hearing loss.

### A. Audiological Evaluations and Regional Office Adjudications

In an attempt to obtain an increased disability rating, Mr. Savage underwent numerous audiology evaluations between 2001 and 2009. These examinations, which are summarized below, were conducted by both private and VA examiners.

In November 2002, Mr. Savage sought an increased disability rating. In support of his claim, he submitted two private audiological evaluations: A November 2001 evaluation that diagnosed "[b]ilateral severe conductive hearing loss" with word recognition, or speech discrimination, scores of 92% in the right ear and 84% in the left (Record (R.) at 741, 743); and a July 2002 evaluation that diagnosed bilateral "mild to moderately severe mixed" hearing loss and showed word recognition scores of 92% in each ear (R. at 742).

A January 2003 VA audiological evaluation showed moderate bilateral mixed hearing loss. During that evaluation, Mr. Savage's pure tone threshold average was 43.75 decibels in the right ear and 41.25 decibels in the left; his speech discrimination score was 80% in the right ear and 70% in the left. The diagnosis was "bilateral mixed loss" and his speech discrimination scores, based on the "Maryland CNC Word list," were 80% in the right ear and 70% in the left ear. R. at 713.

In a February 2003 rating decision, a VA regional office assigned a 10% disability rating, effective November 14, 2002, based on the January 2003 VA examination. Mr. Savage filed a Notice of Disagreement with that decision in March 2003.

Mr. Savage then submitted private audiological evaluations dated July 2003, December 2004, and June 2006. The July 2003 evaluation found "[b]ilateral, moderate, mixed hearing loss, flat," with "excellent" speech discrimination bilaterally. R. at 665. The December 2004 evaluation stated that Mr. Savage had "[b]ilateral, moderate, flat, mixed hearing loss" and "excellent" speech discrimination bilaterally with scores of 100% discrimination "in quiet." R. at 556-57. The June 2006 evaluation demonstrated "moderate bilaterally symmetrical mixed hearing loss" with "good to excellent" speech discrimination bilaterally. R. at 361. In particular, Mr. Savage demonstrated 84% word recognition in his right ear and 96% in his left.

A March 2007 VA report of a hearing evaluation stated that Mr. Savage reported experiencing fluctuating hearing daily. Audiological testing showed "moderately-severe rising to moderate" mixed hearing loss in his right ear and "moderately-severe rising to moderate primarily conductive" hearing loss in his left ear. R. at 272. The audiologist noted that Mr. Savage's word recognition scores were 96% in his right ear and 100% in his left. A July 2007 VA progress note stated that Mr. Savage was seen for a hearing aid assessment. Testing revealed mild to moderately severe mixed hearing loss in both ears. The audiologist wrote: "Audiometric pure-tone thresholds are fairly similar to those obtained" during the March 2007 evaluation. R. at 259.

A September 2007 VA audiological examination showed pure tone threshold averages of 50 decibels in the right ear and 52.5 decibels in the left ear, with word recognition scores of 92% in the right ear and 88% in the left. The examiner concluded that Mr. Savage suffered from moderately severe hearing loss bilaterally.

A May 2008 private audiological examination found "a right borderline moderate-severe/left severe mixed hearing loss with mild asymmetry between the puretone thresholds" with 100% speech discrimination bilaterally in quiet. R. at 116, 118.

A March 2009 VA contract audiological examination found pure tone threshold averages of 65 decibels in the right ear and 66.25 decibels in the left ear, with speech discrimination scores of 96% in each ear.

In a March 2009 Supplemental Statement of the Case, the regional office increased Mr. Savage's disability rating to 20%, effective March 18, 2009, the date of the most recent VA

3

examination. The regional office found no evidence of worsened hearing prior to the March 2009 VA examination.

An August 2009 VA progress note stated that audiological testing indicated "a moderate to moderately-severe mixed hearing loss" in the right ear and "a moderate to severe mixed hearing loss" in the left ear, with "good" speech discrimination scores of 96% in the right ear and 92% in the left. R. at 18-19. In September 2009, another VA progress note stated that audiological testing conducted was consistent with the results obtained during the August 2009 evaluation, and that Mr. Savage had "moderate to mod[erate]-severe mixed loss" in his right ear and "severe mixed loss" in his left ear. R. at 18. In September 2009, Mr. Savage appealed to the Board.

B. October 2009 Board Decision

In October 2009, the Board issued the decision on appeal, denying entitlement to a disability rating for bilateral hearing loss in excess of 10% between November 14, 2002, and March 17, 2009, and in excess of 20% from March 18, 2009. The Board first determined that VA had satisfied its duty to assist Mr. Savage. In particular, the Board noted that Mr. Savage's claims file contained VA and private medical records and that Mr. Savage had been provided VA audiological examinations in January 2003, September 2007, and March 2009. The Board stated:

> At the most recent [VA] examination, the examiner described the effects of [Mr. Savage's] condition on his occupation and on his daily activity. Throughout the appeal, [Mr. Savage] has submitted statements describing his difficulties with communication. On review, the functional impairments associated with [Mr. Savage's] hearing loss are essentially noted in the record and the Board finds that further examination is not necessary.

R. at 7.

The Board then explained:

> The basic method of rating hearing loss involves audiological test results of organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests (Maryland CNC), together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 Hertz.

R. at 9; *see* 38 C.F.R. § 4.85(a) (2010). The Board then stated:

> The Board acknowledges that private records show continued treatment for hearing loss and the need for hearing aids. These records include various audiograms

4

documenting the severity of the Veteran's hearing loss. On review, it is unclear whether the speech discrimination testing was conducted using the Maryland CNC test and therefore, these examinations are not considered adequate for VA rating purposes. Thus, the Board's discussion will focus on the VA compensation and pension examinations, which contain the necessary information for evaluating the Veteran's hearing loss disability.

R. at 9.

Based solely on the January 2003 and September 2007 VA examinations outlined above, the Board determined that Mr. Savage was not entitled to a disability rating in excess of 10% between November 14, 2002, and March 17, 2009. Based solely on the March 2009 VA examination, also outlined above, the Board determined that the criteria for a disability rating in excess of 20% from March 18, 2009, was not warranted. Regarding the August 2009 VA progress note, outlined above, the Board stated: "Audiometric values were not provided and it is unclear whether word recognition testing was conducted pursuant to the Maryland CNC. Therefore, this evaluation is not adequate for rating purposes." R. at 11. The Board noted that the September 2009 VA progress note stated that audiology testing was "consistent with the previous results." *Id.*

C. Arguments of the Parties

On appeal, Mr. Savage makes two arguments. First, he contends that the Board failed to comply with VA's duty to assist in that the Board rejected the private audiological examinations and March 2007 and August 2009 VA progress notes because they were "unclear" regarding the testing used without returning the examinations and seeking clarification. He asserts that the Board violated 38 C.F.R. §§ 4.2 and 19.9. Second, Mr. Savage argues that the Board's reasons or bases for rejecting the private examinations and VA progress notes are inadequate because the Board failed to explain why clarification was not warranted.

In response, the Secretary argues that the Board's duty to obtain clarification of medical examinations applies only to VA compensation and pension examinations, not private examination reports or VA progress notes. Further, the Secretary contends that the Board's duty to assist by obtaining clarification of unclear medical examinations is triggered only when such clarification is necessary to decide the claim, and the Board in this case had sufficient medical evidence to reach

5

a conclusion. The Secretary also asserts that the Board provided adequate reasons or bases for rejecting the private examinations and the VA progress notes.

## II. ANALYSIS

Mr. Savage contends that VA had a duty to return the private audiological examinations and VA treatment records that it stated were "unclear" to clarify the type of audiological testing performed before rejecting them as inadequate. He argues that VA's duty to assist, bolstered by two regulations, requires such action on the part of VA. In this case, because these reports reasonably appear to contain information that is not otherwise in the record and that may potentially help substantiate Mr. Savage's claim, the Board should have sought clarification of the private medical reports or explained clearly and adequately why it did not.

### A. Duty To Assist

"The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C. § 5103A(a)(1). The Secretary is exempt from this responsibility only where "no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C. § 5103A(a)(2). Although section 5103A enumerates particular duties required of the Secretary, including providing a medical examination or opinion where one "is necessary to make a decision on the claim," 38 U.S.C. § 5103A(d)(1), it also makes clear that the Secretary is not limited to those enumerated duties in assisting claimants in obtaining information and evidence to substantiate their claims. *See* 38 U.S.C. § 5103A(g) ("Nothing in this section shall be construed as precluding the Secretary from providing such other assistance under subsection (a) to a claimant in substantiating a claim as the Secretary considers appropriate."). Except where specifically limited, the enumerated duties are subordinate to the overall statutory duty to provide reasonable assistance to the claimant.

Pursuant to his duty to assist, the Secretary has promulgated various regulations that, we believe it fair to infer, he believes constitute "reasonable efforts" to assist claimants. Among these regulations are 38 C.F.R. § 19.9 and 38 C.F.R. § 4.2.

6

*1. 38 C.F.R. § 19.9*

Section 19.9(a) of title 38 of the Code of Federal Regulations provides: "If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a [Board member] shall remand the case to the agency of original jurisdiction, specifying the action to be undertaken." As Mr. Savage notes in his brief, the Court addressed the Board's duty to obtain clarification of evidence under § 19.9 in *Tyrues v. Shinseki*:

> The plain language of § 19.9 does not limit the Board to seeking clarification of the evidence, nor has the Court adopted the "mandatory clarification" interpretation of § 19.9 that the appellant advances in his brief. Rather, the regulation contemplates situations in which the Board may choose to obtain "further evidence" instead of requiring clarification of the existing evidence; and, it is well established that the Board has the discretion to determine whether further development is needed to make a decision on a claim.

23 Vet.App. 166, 182 (2009) (citations omitted), *appeal docketed*, No. 2010-7011 (Fed. Cir. Nov. 3, 2009). In *Tyrues*, the appellant argued that the Board failed to satisfy its duty to assist him by not seeking clarification of a *VA medical opinion* either before or in addition to ordering a new VA medical examination. The Court found that the Board had provided inadequate reasons or bases for ordering a new VA medical examination–and for expressly directing that the new examination be performed by a different physician than the one who had performed the initial examination–rather than simply seeking clarification from the initial physician. *Id.* at 183-84. The Court remanded the appellant's claim for the Board to either seek clarification from the initial physician or provide adequate reasons or bases for its decision not to seek such clarification. *Id.* at 184.

Mr. Savage attempts to distinguish his case from *Tyrues*, arguing that, here, the Board did not remand his claim to develop further evidence but instead "decided the claim without attempting to seek any clarification, knowing full well[] that the [rejected] audiogram results may have included the Maryland CNC test." Appellant's Brief (Br.) at 7. It is clear from *Tyrues* that Mr. Savage's argument that § 19.9 *compels* VA to obtain clarification of evidence is incorrect, *see* 23 Vet.App. at 182, and it is clear from the language of the regulation itself that remand for clarification or further development is required only where it is reasonable and "essential to a proper decision," 38 C.F.R. § 19.9(a). Any suggestion from the Secretary, however, that *Tyrues* limits VA's duty to seek

clarification (or explain why clarification is not warranted) to VA medical examination reports is not supported by the Court's analysis in that case.

Section 19.9 may not be read in isolation, but rather should be read in the larger context of VA's duty to develop a claim. After all, the regulation is entitled "Remand for further development." As statutory section 5103A makes clear, the Secretary is required to make "reasonable efforts" to assist a claimant in developing his claim, and regulatory § 19.9 makes clear that part of those "reasonable efforts" includes seeking clarification of unclear "evidence," which necessarily includes medical examination reports of all kinds. If VA opts not to seek such clarification, but rather to develop new evidence, *Tyrues* makes it plain that VA–either the regional office or the Board–must thoroughly explain why, a task the Board failed to undertake in this case. *See Tyrues*, 23 Vet.App. at 184.

### 2. 38 C.F.R. § 4.2

Section 4.2 of title 38 of the Code of Federal Regulations provides:

> Different examiners, at different times, will not describe the same disability in the same language. Features of the disability which must have persisted unchanged may be overlooked or a change for the better or worse may not be accurately appreciated or described. It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. Each disability must be considered from the point of view of the veteran working or seeking work. If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes.

Mr. Savage asserts that this regulation requires VA to obtain clarification of private examination reports, while the Secretary contends that VA's duty to obtain clarification of medical examinations under § 4.2 applies only to VA examinations.

### a. Plain Language

We begin with the plain language of the regulation. *See Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (holding that, in interpreting a statute or regulation, the "'starting point . . . is its language'" (quoting *Lee v West*, 13 Vet.App. 388, 394 (2000))); *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are

8

interpreted according to the canons of construction."). To that end, the Secretary contends that the phrase "examination report" in § 4.2 is a "term of art" that "refers exclusively to reports compiled by Compensation and Pension medical examiners assigned to perform examinations pursuant to 38 U.S.C. § 5103A(d)." Secretary's Br. at 7. In support of his argument, the Secretary offers the VA Adjudication Procedures Manual (M21-1MR), in particular the section on "Reviewing Department of Veterans Affairs (VA) Examination Reports." M21-1MR, pt. 3, subpt. iv, ch. 3, § D(18). This assertion, however, is unsupported by anything other than the Secretary's own statement, made for the first time in this litigation, that this is so. Although it is true that Section D is titled "Examination Reports" and sections 18(g) and (f) specifically discuss when a *VA* examination report is insufficient for rating purposes and when it should be returned for clarification, that section does not anywhere suggest that *only* VA examination reports can or should be returned for clarification.[3] Nor does it state that the term "examination reports" as used in VA regulations applies only to Compensation and Pension examination reports generated by VA. Accordingly, especially in light of the statutory duty to provide reasonable assistance to claimants, this argument must fail.

Although not argued by the Secretary, the Court recognizes that § 4.2 was enacted in 1976, at a time when the law required that all private medical opinions submitted in support of claims for compensation be confirmed by VA medical examinations. *See* 38 C.F.R. § 3.326(d) (1975) (limiting VA's ability to accept an otherwise adequate private physician's statement without the need for additional VA examination only "for rating the pension claim of a veteran, widow, or widower, a claim for aid and attendance allowance by a widow, widower, or parent, or a claim by a child based on permanent incapability of self-support"). That requirement no longer exists, however, while the language of § 4.2 remains wholly unchanged. *See* 38 C.F.R. § 3.326(c) ("Provided that it is otherwise adequate for rating purposes, a statement from a private physician may be accepted for rating a claim without further examination."); *compare* 38 C.F.R. § 4.2 (1976) *with* 38 C.F.R. § 4.2

---

[3] The Court also notes that there is some precedent for returning non-VA medical reports for clarification in a separate portion of M21-1MR. Part 3, subpart iv, chapter 5 indicates that VA reviewers should request clarification of any "inadequate non-VA hospital report" received from a state hospital, a county hospital, a municipal hospital, a contract hospital, or a private hospital. M21-1MR, pt. 3, subpt. iv, ch. 5, § 7. Moreover, M21-1MR provides that VA examinations are to be authorized only "if a satisfactory corrected [non-VA hospital] report cannot be obtained within a reasonable period of time." *Id.*

(2010). That plain language in no way limits the Secretary's duty to return insufficient examination reports to examination reports provided by VA physicians.

As the Secretary argues, the Court should give deference to the Secretary's longstanding interpretation of its own regulations, provided that it is not plainly erroneous or inconsistent with the regulation. *See Reizenstein v. Shinseki*, 583 F.3d 1331, 1336 (Fed. Cir. 2009). Here, however, the Secretary offers no support for his alleged longstanding interpretation other than a regulatory history that is inconclusive regarding the existence of a longstanding interpretation. Second, the regulatory interpretation offered for the first time in litigation, and without sufficient information to establish that the litigation position actually conforms to agency practice, is inconsistent with the plain language of the regulation.

The Secretary is, of course, free to amend his regulations to accord with his desired interpretation, in accordance with proper notice and comment procedures, *see* 5 U.S.C. § 553, and to the extent the amended regulations do not conflict with the statutory mandate of section 5103A, but he has not done so. He may not attempt to subvert the plain language of his regulation simply by taking a litigating position that the regulation means something other than what it says. *See Auer v. Robbins*, 519 U.S. 452, 462 (1997) (holding that agency positions adopted in response to litigation, or those adopted as a "'post hoc rationalization' advanced by an agency seeking to defend past agency action against attack" are not entitled to deference from the Court (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988))); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'[L]itigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action, advanced for the first time in the reviewing court." (citing *Bowen*, 488 U.S. at 212)).

### b. 38 C.F.R. § 3.326(a)

The Secretary next asserts that his position is also supported by 38 C.F.R. § 3.326(a) (2010), which provides: "Where there is a claim for disability compensation or pension but medical evidence accompanying the claim is not adequate for rating purposes, a Department of Veterans Affairs examination will be authorized." The Secretary argues that this regulation demonstrates that when adjudicators are "faced with unclear medical evidence[,] they are expected to request a VA examination, which cures the problem of inadequate medical evidence and fully develops the

record." Secretary's Br. at 5. In other words, the Secretary contends that § 3.326(a) requires that VA *develop* new, adequate medical evidence in the form of a VA medical examination, not *clarify* existing inadequate medical evidence. The Court does not believe that § 3.326 provides authority for the proposition that VA need not seek clarification of unclear or inadequate private medical examinations merely because they are not sponsored by VA. Instead, that regulation simply gives the Secretary *the authority* to provide a VA medical examination to further develop the evidence necessary to decide the claim.[4] Nothing in that regulation prohibits VA from also (or instead) seeking clarification of a private medical examination, and such an interpretation is consistent with *Tyrues*. *See Tyrues*, 23 Vet.App. at 184.

### c. 38 U.S.C. § 5103A(d)

The Secretary next argues that VA's duty to assist–particularly its duty to provide medical examinations–also supports his position that § 4.2 does not require clarification of private medical examinations or VA progress notes. The Secretary correctly states that VA is required to provide a medical examination only where one is necessary to decide the claim. *See* 38 U.S.C. § 5103A(d)(1)(a). Further, the Secretary notes that an examination is necessary to decide the claim "where the record raises an indication of a current disability and an in-service injury, but 'does not contain sufficient medical evidence to make a decision on the claim.'" Secretary's Br. at 5 (quoting 38 U.S.C. § 5103A(d)(2)(C)).

The Secretary's contention that § 5103A(d) somehow means that clarification of private examination reports is never required must fail. First, subsection (d) on its face addresses only when VA is required to *provide* a medical examination, not when clarification of private medical examination reports might be necessary. Second, subsection (d) of section 5103A does not stand alone; subsection (a) of section 5103A requires the Secretary to also undertake reasonable efforts to obtain evidence needed to substantiate the claim. Although it is correct that a VA medical examination report might appear to include the information necessary to properly decide the claim, the Secretary fails to recognize that a VA medical examination may not reveal the precise information that reasonably is available from a private examination report if clarified, and that, as

---

[4] The Court recognizes that a VA medical examination *is* required under certain circumstances. *See* 38 U.S.C. § 5103A(d) (discussed further below); 38 C.F.R. § 3.159(c)(4) (2010).

clarified, would be needed to properly substantiate the claim. This scenario is particularly relevant in the case of staged ratings where the results of a VA examination conducted at a later time will not necessarily reproduce the results from a private examination conducted years earlier. *See Fenderson v. West*, 12 Vet.App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). Under such circumstances, where the information in the private report, if clarified, reasonably might help substantiate the claim (because it provides information favorable to the claimant that is not otherwise included in the record), the duty to assist by undertaking reasonable efforts to obtain evidence needed to substantiate the claim is not fulfilled until such clarification is sought or the Board explains why such clarification is not necessary. Moreover, it is axiomatic that the claim generally cannot be decided properly until the duty to assist has been fulfilled. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 55 (1990) (recognizing the Secretary's duty to "assist [a veteran who makes a facially valid claim for benefits] in developing the facts pertinent to the claim" and then to determine whether the evidence supports the claim, is in equipoise, or is against the claim).

### d. Caselaw

The Secretary next contends that his position is supported by caselaw, citing *Padgett v. Shinseki*, 23 Vet.App. 306, 311 (2009); *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008); *Bowling v. Principi*, 15 Vet.App. 1, 12 (2001); *DeLuca v. Brown*, 8 Vet.App. 202, 206 (1995), as proof. None of those cases, however, limits the applicability or rationale of § 4.2 to VA examinations alone. In fact, *Padgett* states that "the law and regulation are well-established with respect to the Board's duty to assign due weight to the evidence and to return an inadequate medical examination"–without specifying whether the duty to return an inadequate examination is limited to VA examinations–and references § 4.2 only in a parenthetical to a citation. 23 Vet.App. at 311. The citation to § 4.2 in *Nieves-Rodriguez* appears in a section on the adequacy of VA medical examinations, but that case does not address the limitation the Secretary attempts to read into the regulation. *Bowling* and *DeLuca* simply cite § 4.2 for its plain language and do not address whether there is any limitation on the types of medical examinations to which that regulation applies.

12

The Secretary also asserts that, in *Daves v. Nicholson*, the Court "implicitly acknowledged" that § 4.2 applies only to VA examinations. Secretary's Br. at 6. The Secretary relies on the following passage:

> [I]n disability compensation claims, the Secretary *must* provide a medical examination or opinion if there is competent evidence of a current disability, an indication that the disability may be associated with service, and insufficient medical evidence to render a decision on the claim. If the examination report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (2006).

21 Vet.App. 46, 50 (2007) (citations omitted). The Secretary states: "The context of the Court's reference and citation to section 4.2 demonstrates an understanding that clarification is necessary in the context of VA examination reports *only*, not when faced with inadequate private treatment records or VA[] progress notes." Secretary's Br. at 6 (emphasis added). The Court fails to see how the Secretary reaches his conclusion from this passage, or from the context of the passage, based on the facts of *Daves*. In that case, the Court found that the Board erred in not returning a VA examination for clarification where the examiner stated that further testing was needed to reach a medical conclusion. *Id.* at 51. The question whether the duty to return an examination report for clarification arises in the case of a private examination report or VA progress note was simply not before the Court in *Daves*, and the Secretary errs by reading such a finding into that opinion.

The fact that the Court has, so far, only applied § 4.2 in the context of VA medical examination reports does not mean that the regulation, or its rationale, is applicable only to VA medical examination reports.[5] *See McGee v. Peake,* 511 F.3d 1352, 1357 (Fed. Cir. 2008) (noting that the passage of the Veterans' Judicial Review Act imposed a statutory duty on the Secretary to assist the veteran in the development of facts pertinent to his claim and to ensure that the veteran had the opportunity to develop the record "'so that all relevant issues would be considered by the [Board] prior to judicial review'" (quoting S. Rep. No. 100-418 at 38 (1998), and noting that the Veterans Claims Assistance Act "further defined the VA's obligation to fully develop the record" by requiring

_____

[5] The Court notes that several single-judge cases have, in fact, applied § 4.2 to private examination reports, a fact that necessitated panel review of this issue.

13

VA to "'make all reasonable efforts to obtain *relevant* records (including private records)'" (quoting 38 U.S.C. § 5103A(b)(1)); *Gilbert*, 1 Vet.App. at 55.

### 3. Other Concerns

The Court is well aware, as the Secretary pointed out at oral argument, that VA examiners are uniquely within the control of the Secretary, such that completing requests for clarification of medical examination reports falls within the examiners' job duties, while VA has no such control over private examiners. We are not persuaded, however, that this limitation renders the regulations at issue, or the rationale behind the regulations, inapplicable where the medical examination reports of private physicians are unclear. All that control means is that VA can *require* its examiners to perform legitimate examinations or to clarify the reports of those examinations that are insufficient for rating purposes. *See* 38 C.F.R. § 4.2. Nothing in § 4.2, or any other VA regulation, prevents VA from sending a letter to the private examiner or to the claimant stating that the examination report provided is unclear or insufficient and why and requesting further information or clarification. *See* 38 U.S.C. § 5103 (g). If no response is received, either from the private examiner or the claimant, VA may continue on the path of adjudication, weighing the accumulated evidence of record as usual.[6]

Moreover, the Secretary fails to explain, and the Court cannot understand, why or how a request for further information or clarification from a private examiner, either directly or through the claimant, would be burdensome or unreasonable. Accordingly, pursuant to section 5103A(a), when a private examination report reasonably appears to contain information necessary to properly decide

---

[6] This statement should not be read to limit in any way VA's self-imposed duty to make more than one request to *obtain* private records identified by a claimant, provided by 38 C.F.R. § 3.159:

> VA will make reasonable efforts to obtain relevant records not in the custody of a Federal department or agency, to include records from . . . private medical care providers . . . . *Such reasonable efforts will generally consist of an initial request for the records and, if the records are not received, at least one follow-up request.* A follow-up request is not required if a response to the initial request indicates that the records sought do not exist or that a follow-up request for the records would be futile. If VA receives information showing that subsequent requests to this or another custodian could result in obtaining the records sought, then *reasonable efforts will include an initial request and, if the records are not received, at least one follow-up request to the new source or an additional request to the original source*.

38 C.F.R. § 3.159(c)(1) (2010) (emphasis added). This statement should also not be read to limit the applicability of this regulation under the circumstances of this or similar cases.

14

a claim but it is "unclear" or "not suitable for rating purposes," and the information reasonably contained in the report otherwise cannot be obtained, VA has a duty to either (1) ask the private examiner to clarify the report, (2) request that the claimant to obtain the necessary information to clarify the report, or (3) explain why such clarification is not needed. Any request for clarification to a private examiner or to a claimant should clearly indicate what further action needs to be taken to make the insufficient private examination report acceptable for VA consideration.

### 4. Summary

Based on the foregoing discussion, the Court holds that nothing in VA's statutes or regulations, or in this Court's caselaw, limits VA's authority or duty to return inadequate medical examination reports to only those reports prepared by VA medical examiners. Accordingly, when VA concludes that a private medical examination report is unclear or insufficient in some way, and it reasonably appears that a request for clarification, both as limited elsewhere in this opinion, could provide relevant information that is otherwise not in the record and cannot be obtained in some other way, the Board must either seek clarification from the private examiner or the claimant or clearly and adequately explain why such clarification is unreasonable. *See* 38 U.S.C. §§ 5103A(a), 7104(d)(1); *Tyrues*, 23 Vet.App. at 184; 38 C.F.R. §§ 4.2, 19.9(a).

Having found that §§ 4.2 and 19.9 do not limit the Secretary's duty to seek clarification only to VA medical examination reports, the Court recognizes that these regulations provide guidelines, not specific rules, regarding when examinations should be returned as inadequate (e.g., "[I]f a diagnosis is not supported by findings on the examination report . . . ." (38 C.F.R. § 4.2); "[I]f further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper decision . . . ." (38 C.F.R. § 19.9)). Other than outlining the Secretary's duty to provide assistance to claimants and the Board's responsibility to provide adequate reasons and bases for its findings and conclusions, the statutes and regulations provide no other guidance regarding how we are to balance the obligations of assistance and explanation with the burden placed on VA to provide assistance, other than that such assistance must be "reasonable." The Court also acknowledges, as the Secretary argues, that VA has very little ability to compel non-VA medical personnel to comply with its request or to force compliance within a reasonable time frame, which could delay the prompt adjudication of the claim. Consequently, because the Court has determined

that, in some circumstances, there exists a requirement to seek further information from a non-VA medical professional who has provided an examination report, either directly or through the claimant who submitted the private examination report, the Court believes it would be helpful to the Board to describe what constitutes reasonable assistance in such circumstances.

In that vein, we are mindful of the burden that might be placed on VA if it were required to conduct an extensive inquiry of private medical examiners. It should be clearly understood, then, that we do not interpret VA statutes and regulations as establishing a broad requirement that VA inquire of private medical experts regarding the opinions expressed in their examination reports or the general bases therefor. Indeed, we do not expect that clarification of a private examination report *will* be necessary in most instances. Thus, the interpretation we express with respect to clarification of private examination reports is not as broad as the mandate to clarify VA examination reports when such reports meet the rather general conditions set forth in § 4.2.

Rather, our holding is limited to those instances in which the missing information is relevant, factual, and objective–that is, not a matter of opinion–and where the missing evidence bears greatly on the probative value of the private examination report. In this case, for example, whether the Maryland CNC Test was used by the private examiner in the 2003, 2004, 2006, and 2008 hearing tests is relevant because it is the only test that VA will consider in evaluating a person's hearing disability, and because the time between the private examinations and VA examinations is lengthy enough that staged ratings may apply. In other words, the question of which speech recognition test was used is a factual, objective one to which there is a yes or no answer; the question of whether the Maryland CNC Test was used does not in any way rely on the opinion of the examiner.

After considering these factors, should VA determine that seeking clarification would be unreasonable or that the missing information is located elsewhere in the record or may be more easily obtained by some other means without compromising the favorable character of the private examiner's opinion, VA must clearly and adequately explain that decision.[7] *See* 38 U.S.C. § 7104(d)(1); *Tyrues*, 23 Vet.App. at 184.

---

[7] Although our discussion in this matter focuses almost entirely on private medical examination reports, our decision today applies equally to VA progress or treatment notes.

B. October 2009 Board Decision

Having determined that VA's duty to seek clarification of an unclear or insufficient medical examination report is in no way limited to VA examination reports, we now turn to the Board's treatment of the private medical examination reports in this case. We conclude that, under the circumstances of this case, the Board had a duty to seek clarification of the private medical examination reports. *See* 38 U.S.C. § 5103A(a); 38 C.F.R. §§ 4.2, 19.9.

*1. Board Findings Regarding Private Audiological Examination Reports*

Here, the Board refused to consider *any* aspect of the four private audiological evaluations–dated July 2003, December 2004, June 2006, and May 2008–in evaluating the severity of Mr. Savage's hearing loss throughout the pendency of his claim. The Board did not discuss the contents of those evaluations except to generally acknowledge that they showed "continued treatment for hearing loss and the need for hearing aids" and contained audiograms that documented the severity of Mr. Savage's hearing loss. R. at 9. Instead, the Board found that the private examinations were "not considered adequate for VA rating purposes" because it was "unclear whether the speech discrimination testing was conducted using the Maryland CNC test," as required by the rating schedule. *Id.* Despite the Secretary's assertion at oral argument that the Board also rejected the private examination reports because they did not contain audiometry readings that could be "plugged into" the rating schedule, a review of the Board decision demonstrates that the Board rejected the private examinations *solely* because it was unclear whether the Maryland CNC Test had been used to obtain the word recognition scores. The Board's decision to adjudicate Mr. Savage's claim without seeking clarification of favorable private medical examination reports and instead relying solely on VA audiological evaluations is troublesome for many reasons.

a. Staged Ratings

First, and perhaps most importantly, when, as here, there is a prolonged adjudication period, the Board must consider the possibility of staged ratings. *See Fenderson*, 12 Vet.App. at 126. This is especially important in light of Mr. Savage's statements to VA that his hearing loss fluctuated regularly. Here, there is a lengthy period of time–between February 2003 and September 2007–during which the only available evidence of the severity of Mr. Savage's hearing loss is three private examination reports, rendering those reports particularly crucial to properly evaluating Mr.

17

Savage's disability. Although the Board paid lip service to applying staged ratings, in that it considered two distinct periods of time, the Court finds it hard to believe that the Board could adequately evaluate the severity of Mr. Savage's hearing disability between November 2002 and March 2009 based solely on the January 2003 and September 2007 VA examinations. Given the impossibility of developing new evidence that could address the severity of Mr. Savage's disability during that time, it was especially important for the Board to ensure that the evidence that did exist relevant to that period–VA or private–was developed as thoroughly as possible.

b. Nature of Missing Information

Second, the private examination reports rejected by the Board were detailed reports clearly based on objective testing, rather than general opinions lacking unbiased foundation. *See Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (stating that a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"); *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (holding that a medical examination is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one'" (quoting *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991))). Moreover, the private examination reports were rendered by what appear to be, on their face, competent and experienced specialists; the Board expressed no concerns over the qualifications of the private examiners.

In light of the Board's outright dismissal of the private medical examination reports in the absence of this evidence, it is clear that, had this information been obtained, the Board would have been able to properly determine the probative value of the private examination reports. If clarification resulted in a statement that the Maryland CNC Test was used, the private examination reports would have been competent evidence that the Board would have had to weigh against the other evidence of record. If clarification resulted in a statement that a different type of word recognition test was used, the Board could have then discounted the private medical examination reports and weighed the remainder of the evidence without taking the private reports into consideration.

c. Burden on VA To Obtain the Missing Information

Third, the single fact missing from the private examinations–a statement of whether the Maryland CNC Word Recognition Test was used–is an objective fact not subject to interpretation or opinion that can easily be obtained by contacting the private examiners. In other words, the burden on VA in obtaining this missing information is minimal.

In sum, under the facts of this case, we conclude that it was error for the Board not to seek clarification of the private audiological examinations submitted by Mr. Savage or to explain why clarification was not needed.

*2. Consideration of Prejudicial Error*

Having found error, the Court is required to "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b); *see Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004). At oral argument, the Secretary invited the Court to conclude that, even had the Board assumed–or sought and received clarification–that the Maryland CNC Word Recognition Test was used, Mr. Savage's word recognition scores provided in the private examination reports would not change the outcome of the Board's decision. The Court declines the Secretary's invitation.

The Court recognizes that the "[a]ssignment of disability ratings for hearing impairment [is] derived by a mechanical application of the rating schedule" to a claimant's audiometric examination results. *Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992); *see* 38 C.F.R. § 3.385 (2010) (stating that, for VA purposes, "impaired hearing will be considered to be a disability" only when hearing loss examination results reach certain auditory thresholds). However, this Court has made clear that "VA and the [Board] possess specialized expertise in identifying and assessing the medical nature of a claimed condition." *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). The Court will not presume to be able to read Mr. Savage's private audiological examination reports, particularly the portions identifying his pure tone thresholds at the various frequency levels, and determine that, even had the Board considered those reports, the outcome would be the same and that the Board's error was therefore harmless. To the extent that no pure tone threshold *averages* (necessary to the application of the rating schedule) are given on the private examination reports, the Board should either compute them using the puretone threshold information given in the examination reports, if the Board has such expertise, or seek clarification of that information.

19

Accordingly, the Court will vacate the Board's decision and remand the matter for the Board to either seek clarification of the private audiological examination reports or explain why such clarification is not needed.

### III. CONCLUSION

Upon consideration of the foregoing, the October 22, 2009, Board decision is VACATED and the matter is REMANDED for further development and readjudication consistent with this decision.