Citation Nr: 1132150 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 06-00 515 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to an initial compensable evaluation for service-connected bilateral hearing loss prior to December 12, 2009.

2. Entitlement to an initial rating in excess of 10 percent for service-connected bilateral hearing loss from December 12, 2009 onward.


REPRESENTATION

Veteran represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse



ATTORNEY FOR THE BOARD

K. M. Schaefer, Associate Counsel


INTRODUCTION

The Veteran had active duty from December 1953 to December 1955.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decision dated in September 2005 of the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa. In July 2007, September 2009, and January 2011, the Board remanded the case to the agency of original jurisdiction (AOJ) for additional development, and it again returns to the Board for appellate review. 

The Veteran and his spouse testified at a personal hearing before a Decision Review Officer (DRO), sitting at the RO in February 2006 and before the undersigned Veterans Law Judge, sitting at the RO in August 2006. Transcripts of these hearings are associated with the claims file.

The Board observes that the September 2005 rating decision granted service connection for bilateral hearing loss and assigned an initial noncompensable rating, effective March 11, 2005. Thereafter, the veteran appealed with respect to the initially assigned rating. While his appeal was pending, a March 2011 rating decision assigned a 10 percent evaluation, effective December 12, 2009. However, as this rating is still less than the maximum benefit available, the appeal is still pending. AB v. Brown, 6 Vet. App. 35, 38 (1993). 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).



FINDINGS OF FACT

1. Prior to December 12, 2009, service-connected bilateral hearing loss was productive of Level II hearing acuity in the right ear and Level I hearing acuity in the left ear at its most severe. 

2. From December 12, 2009 onward, service-connected bilateral hearing loss is productive of Level V hearing acuity in the right ear and Level IV hearing acuity in the left ear at its most severe. 


CONCLUSIONS OF LAW

1. Prior to December 12, 2009, the criteria for an initial compensable rating for service-connected bilateral hearing loss have not been met. 38 U.S.C.A. 
§ 1155 (West 2002); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2010). 

2. From December 12, 2009 onward, the criteria for an initial rating in excess of 10 percent for service-connected bilateral hearing loss have not been met. 38 U.S.C.A. 
§ 1155 (West 2002); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Stegall Considerations

The Board observes that this case was remanded by the Board in July 2007, September 2009, and January 2011. The United States Court of Appeals for Veterans Claims (Court) has held "that a remand by this Court or the Board confers on the Veteran or other claimant, as a matter of law, a right to compliance with the remand orders." See Stegall v. West, 11 Vet. App. 268, 271 (1998). The purpose of July 2007 remand was to achieve further development of the claim, namely to schedule another VA audiological examination. When the appeal returned to the Board, the examination performed in response was found to be inadequate; therefore, the appeal was remanded again. 

The next VA examination was also deemed inadequate, and in an effort to rectify the deficiency the Board requested an opinion from the Veterans Health Administration (VHA), which was received in August 2010. The Board determined that this opinion was thorough and complete; however, a recent opinion of the Court of Appeals for Veterans Claims necessitated the Board's January 2011 remand. See Savage v. Shinseki, 24 Vet. App. 259 (2011) (requiring clarification of private examination results when the information is necessary to decide the claim and is unclear or unsuitable for rating purposes, or an explanation as to why clarification is not needed). Specifically, the appeal was remanded in January 2011 so that further information could be gathered regarding a February 2006 private audiological evaluation and another VA opinion be obtained in light of that information. A response from the private audiologist was received in March 2010, and a VA opinion was obtained in May 2011. The Board's review of the above evidence shows that the RO/AMC's actions in response to the January 2011 remand orders substantially complied with the intent of the orders. Therefore, the Board finds that the Board may now proceed with appellate adjudication of the claim.

II. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) imposes certain duties upon VA to notify the claimant of the shared obligations of the claimant and VA in developing his or her claim and to assist the claimant by making reasonable efforts to obtain relevant evidence in support of the claim. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). 

VA must inform a claimant about the information and evidence not of record that is necessary to substantiate the claims, the information and evidence that VA will seek to provide, and the information and evidence that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1) (revised 73 Fed. Reg. 23353-23356, April 30, 2008); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Additionally, in the consolidated appeal of Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Court of Appeals for Veterans Claims (Court) held that VCAA notice requirements also apply to the evidence considered in determinations of the degree of disability and effective date of the disability once service connection has been established. 

VCAA notice must be provided before the initial unfavorable agency of original jurisdiction (AOJ) decision on the claims for VA benefits. Pelegrini v. Principi, 18 Vet. App. 112 (2004). In this case, the Veteran was provided with a VCAA notification letter in April 2005, prior to the initial unfavorable AOJ decision issued in September 2005. An additional letter was sent in August 2007, which was relevant to the initial rating claim and addressed disability ratings and effective dates. 

The Board observes that the pre-adjudicatory VCAA notice informed the Veteran of the type of evidence necessary to establish service connection, how VA would assist him in developing his claim, and his and VA's obligations in providing such evidence for consideration. With regard to the initial rating claim, such claim is generally considered to be "downstream" issues from the original grant of benefits. VA's General Counsel issued an advisory opinion holding that separate notice of VA's duty to assist the Veteran and of his concomitant responsibilities in the development of his claim involving such downstream issues is not required when the Veteran was provided adequate VCAA notice following receipt of the original claim. See VAOPGCPREC 8-2003. Further, the Board notes that no duty to assist arises upon receipt of a Notice of Disagreement. 38 C.F.R. § 3.159(b)(3); see 73 Fed. Reg. 23353 (adding paragraph (3) under § 3.159(b). Where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements. See Goodwin v. Peake, 22 Vet. App. 128 (2008), citing Dunlap v. Nicholson, 21 Vet. App. 112, 119 (2007). In this case, the Veteran has not alleged that he has suffered any prejudice as to the lack of pre-adjudicatory notice as to disability ratings and effective dates. 

Moreover, the Board notes that, as a matter of law, providing the Veteran with VCAA-compliant notice prior to a readjudication "cures" any timing problem resulting from any deficiency in notice content or the lack of notice prior to an initial adjudication. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007), citing Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). A statement of the case (SOC) and supplemental SOC (SSOC) constitute "readjudication decisions" that comply with all due process requirements if preceded by adequate VCAA notice. See id. In the present case, subsequent to the August 2007 letter, the Veteran's claim was readjudicated, thereby rectifying any timing problem with regard to the notice required under Dingess/Hartman.

Accordingly, the Board determines that the content requirements of VCAA notice have been met and the purpose of such notice, to promote proper development of the claim, has been satisfied. Mayfield, 444 F.3d at 1333. Based on the above, the Board finds that further VCAA notice is not necessary prior to the Board issuing a decision.

VA has also fulfilled its duty to assist the Veteran in making reasonable efforts to identify and obtain relevant records in support of the Veteran's claim and providing him with a VA examination. The Veteran's service treatment records, VA medical records, private treatment records, and the reports of a August 2005, August 2007, and December 2009 VA audiological examinations and a May 2011 VA opinion were reviewed by both the AOJ and the Board in connection with adjudication of the claim. The Veteran has not identified any additional, relevant records that VA needs to obtain for an equitable disposition of the claim. 

With regard to the VA examinations and opinion, the Board notes that once VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). In this case, each examiner reviewed the claims file, documented the Veteran's subjective complaints and relevant medical history, and examined the Veteran, to include the necessary audiological testing. Thereafter, in the reports, they provided the information required to determine the appropriate disability rating under the schedular criteria. To the extent the VA examination reports were found inadequate as discussed above, the deficiencies related to the examiner's discussion of a February 2006 private audiogram and not to the contemporaneous examination and findings documented in the reports.
The Board acknowledges that in Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), the Court held that, relevant to VA audiological examinations, in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. In the present case, neither VA audiological evaluation of record contains findings relevant to the impact of the Veteran's hearing on his daily and occupational living. However, the Board notes that in Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009), the Court of Appeals for the Federal Circuit (Federal Circuit) found that the phrase "daily life" as used in Part 4 of 38 C.F.R., can be cited to Subpart A, which provides "regulations prescribing the policies and procedures for conducting VA medical examinations." See Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007). The Court has previously noted that regulations governing procedures for conducting VA medical examinations are not considered part of the rating schedule because, "[t]he rating schedule consists only of those regulations that establish disabilities and set forth the terms under which compensation shall be provided. A regulation prescribing the policies and procedures for conducting a VA medical examination does not serve these purposes." As such, the Federal Circuit stated that while the effects of daily life are relevant to the doctor conducting the examination, these effects are not relevant to disability rating specialist. Therefore, while the Board acknowledges that the VA examiners failed to address the impact of the Veteran's hearing loss on his daily living, the Board finds that addressing such factors is not necessary. See Vazquez-Flore at 1280. 

Finally, as for the May 2011 VA opinion, the Board observes that the audiologist reviewed the claims file, including all prior VA examinations, and provided an opinion with clear rationale in response to the question posed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion for the issues on appeal has been met. 38 C.F.R. § 3.159 (c)(4). 

In light of the above, the Board concludes that the medical evidence of record is sufficient to adjudicate the Veteran's claim without further development and additional efforts to assist or notify the Veteran in accordance with VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran). Therefore, the Board determines that the Veteran will not be prejudiced by the Board proceeding to the merits of the claim.

III. Analysis

The Veteran's service-connected bilateral hearing loss is currently assigned a 10 perent rating evaluation pursuant to 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2010). The Veteran contends that the severity of his hearing loss warrants higher ratings than those assigned. 
 
Ratings of hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests (Maryland CNC) combined with the average hearing threshold levels as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 cycles per second. To rate the degree of disability for service-connected hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85(h), Tables VI, VIA (2010). In order to establish entitlement to a compensable rating for hearing loss, certain minimum levels of the combination of the percentage of speech discrimination loss and average pure tone decibel loss must be met. 

The results of the pure tone audiometry test and speech discrimination test are charted on Table VI, Table VIA, in exceptional cases as described in 38 C.F.R. 
§ 4.86, and Table VII, as set out in the Rating Schedule. 38 C.F.R. § 4.85. Table VIA is for consideration when an exceptional pattern of hearing loss is shown, specifically when the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86. When the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more in a particular ear, determination of the level of hearing acuity in that ear will be made using either Table VI or Table VIA, whichever results in the higher numeral. Id. 

The Veteran submitted his claim in March 2005. During the appeal period, he was afforded three VA examinations: August 2005, August 2007, and December 2009. Additionally, there is a February 2006 private audiogram chart of record. 

The Board may not draw a medical conclusion based on its own interpretation of test results, such as an audiogram. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (the Board is prohibited from exercising its own independent judgment to resolve medical questions). Thus, the Board requested that the results of the February 2006 audiogram be interpreted by VA examiners and a VHA specialist. 

In an August 2010 opinion, the VHA specialist reported the pure tone thresholds as documented on the audiogram, as well as the speech recognition thresholds. However, the specialist discussed at length the various measures used to assess speech recognition and explained that the audiogram indicates that MLV (monitored live voice) was used to present the words, which is not consistent with VA audiological examinations. He also indicated that the presentation threshold of the words was not reported and that there is no indication of the number of words on the list used; the specialist stated that the Maryland CNC test uses 50 word lists. Further, the examiner estimated that the word list used was more likely the W-22 or NU-6 because they would be standard in a non-forensic, non-VA setting. For these reasons, the specialist determined that the speech recognition test in February 2006 was not a Maryland CNC test. 

Additionally, a March 2011 response from the private clinic where the February 2006 evaluation was performed stated that a Maryland CNC test was not used, which was reiterated by a May 2011 VA audiologist. The audiologist also indicated that the Maryland CNC test was not commonly used at basic hearing evaluations in the state of Iowa where the private evaluation was performed. In light of these findings, the Board determines that the February 2006 private audiological evaluation does not meet the criteria for use in determining hearing acuity for rating purposes. Therefore, only the results of the VA examinations will be contemplated by the Board. 

The VA evaluations yielded the following results with pure tone thresholds, measured in decibels: 

August 2005




HERTZ




1000
2000
3000
4000
RIGHT

55
60
60
70
LEFT

10
35
50
60

The average decibel loss was 61 decibels in the right ear and 34 decibels in the left ear. Speech audiometry revealed speech recognition ability of 94 percent in the right ear and 94 percent in the left ear. 

August 2007




HERTZ




1000
2000
3000
4000
RIGHT

50
60
55
65
LEFT

10
25
55
60

The average decibel loss was 57.5 decibels in the right ear and 37.5 decibels in the left ear. Speech audiometry revealed speech recognition ability of 90 percent in the right ear and 92 percent in the left ear. 







December 2009




HERTZ




1000
2000
3000
4000
RIGHT

45
60
60
70
LEFT

10
30
60
55

The average decibel loss was 59 decibels in the right ear and 39 decibels in the left ear. Speech audiometry revealed speech recognition ability of 72 percent in the right ear and 72 percent in the left ear.
 
Using Table VI, these audiometric test results show the Veteran had Level III hearing loss in the right ear and Level I hearing loss in the left ear prior to December 12, 2009 at the most severe. 38 C.F.R. § 4.85. From that date onward, the medical evidence shows he had Level V hearing loss in the right ear and Level IV hearing loss in the left ear. Applying the percentage ratings for hearing impairment found in Table VII, Level III hearing acuity combined with Level I hearing acuity results in a noncompensable rating. Id. Level V hearing acuity combined with Level IV hearing acuity results in a 10 percent rating. 

The Board acknowledges the statements of the Veteran that his bilateral hearing loss warrants a higher rating evaluation, as well as the statements of his spouse as to the severity of the Veteran's hearing loss. The Veteran can attest to factual matters of which he has first-hand knowledge, e.g., perceived hearing difficulty. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the opinions and observations of the Veteran and other laypersons alone cannot meet the burden imposed by the rating criteria under 38 C.F.R. § 4.85, Diagnostic Code 6100, with respect to determining the severity of his service-connected bilateral hearing loss. See Espiritu v. Derwinski, 2 Vet. App. 792 (1992); 38 C.F.R. §§ 3.159(a)(1), (2) (2010). Thus, there is no competent evidence showing that the Veteran's hearing loss disability is more severe than demonstrated at the VA audiological evaluations considered herein. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, as there is no competent evidence in favor of ratings in excess of those assigned, the preponderance of the evidence is against the Veteran's claim for higher ratings for his service-connected bilateral hearing loss, and the doctrine is not applicable in this case. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. §§ 4.3, 4.7. Therefore, the Veteran's claim must be denied. 

The Board notes that an extra-schedular rating is a component of a claim for an increased rating. Barringer v. Peake, 22 Vet. App. 242 (2008); see Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extra-schedular consideration is a finding on part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008); see Fisher v. Principi, 4 Vet. App. 57, 60 (1993); 38 C.F.R. § 3.321(b)(1) (2010). If so, factors for consideration in determining whether referral for an extra-schedular rating include marked interference with employment or frequent periods of hospitalization that indicate that application of the regular schedular standards would be impracticable. Thun, citing 38 C.F.R. § 3.321(b)(1) (2010). In the present case, the Board finds no evidence that the Veteran's service-connected bilateral hearing loss presents such an unusual or exceptional disability picture at any time so as to require consideration of an extra-schedular evaluation pursuant to the provisions of 38 C.F.R. § 3.321(b)(1). Further, the Board recognizes that specific complaints of how hearing loss affects daily activities are not addressed in the rating schedule. However, the Board also finds that such complaints are not particularly unusual with a hearing loss disability. Absent evidence of marked interference with employment, the Board determines that referral for an extra-schedular rating is not warranted.

Finally, while the appeal was pending, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a TDIU claim is part and parcel of an increased-rating claim when raised by the record. The Board has jurisdiction to consider the Veteran's possible entitlement to a TDIU rating in this circumstance when the TDIU issue is raised by assertion or reasonably indicated by the evidence and is predicated at least in part on the severity of the service-connected disability in question, regardless of whether the RO has expressly addressed this additional issue. See VAOPGCPREC 6-96 (Aug. 16, 1996). See also Caffrey v. Brown, 6 Vet. App. 377 (1994); Fanning v. Brown, 4 Vet. App. 225, 229 (1993); EF v. Derwinski, 1 Vet. App. 324 (1991). In this case, the Veteran has not filed a claim for TDIU, and the record does not suggest that he is not employed due to his service-connected bilateral hearing loss. Therefore, further contemplation of a TDIU rating in this case is not necessary.


ORDER

A compensable rating for service-connected bilateral hearing loss prior to December 12, 2009 is denied.

A rating in excess of 10 percent for service-connected bilateral hearing loss from December 12, 2009 onward is denied.



____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs