Citation Nr: 1228225 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-00 638 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for depression, to include as secondary to service connected disabilities. 

2. Entitlement to service connection for a scar on the neck. 

3. Entitlement to service connection for Meniere's disease, claimed as dizziness, to include as secondary to service connected disabilities. 

4. Whether new and material evidence has been presented to reopen a claim for service connection for a lumbar spine disability.

5. Whether new and material evidence has been presented to reopen a claim for service connection for a cervical spine disability.

6. Whether new and material evidence has been presented to reopen a claim for service connection for dermatophytosis.

7. Whether new and material evidence has been presented to reopen a claim for service connection for tinnitus. 

8. Whether new and material evidence has been presented to reopen a claim for service connection for bilateral leg paralysis, formerly claimed as a bilateral leg disability.

9. Whether new and material evidence has been presented to reopen a claim for service connection for traumatic brain injury (TBI), formerly claimed as the residuals of a head injury.

10. Entitlement to service connection for TBI on a de novo basis. 

11. Entitlement to an initial evaluation in excess of 10 percent for headaches prior to August 22, 2008. 

12. Entitlement to an evaluation in excess of 30 percent for headaches from August 22, 2008. 

13. Entitlement to a compensable evaluation for hearing loss from May 1, 2009 to July 19, 2010, to include the propriety of the reduction from 10 percent to zero percent.

14. Entitlement to an evaluation in excess of 10 percent for hearing loss prior to May 1, 2009 and from July 19, 2010.


REPRESENTATION

Veteran represented by: Eric A. Gang, Esq.




ATTORNEY FOR THE BOARD

J. L. Prichard, Counsel


INTRODUCTION

The Veteran had active service from January 1964 to January 1966. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal of rating decisions of the San Juan, Puerto Rico regional office (RO) of the Department of Veterans Affairs (VA). 

The record indicates that the Veteran's claims for service connection for TBI and bilateral leg paralysis have each been developed as claims for service connection on a direct basis. However, as will be demonstrated below, the record contains previous denials of claims for service connection for the residuals of a head injury and service connection for a disorder of the legs. As the Veteran's current claims are in essence claims for the same disabilities, the Board finds that it must be determined whether or not new and material evidence has been presented to reopen the previously denied claims. These two claims have been characterized as such on the first page of this decision. However, as will be seen, the Board will determine that new and material evidence has been submitted to reopen the claim for TBI, and will consider this claim on a de novo basis as well. This is also reflected on the first page of this decision. 

The record indicates that the evaluation of the Veteran's service connected headaches was increased from 10 percent to 30 percent during the course of this appeal. The evaluation for his hearing loss was also increased from zero percent to 10 percent. A veteran is generally presumed to be seeking the maximum benefit allowed by law and regulation, and a claim remains in controversy where less than the maximum available benefit is awarded. AB v. Brown, 6 Vet. App. 35 (1993). Therefore, these matters remain before the Board. However, the claim for a higher rating for headaches has been characterized as two separate issues based on the date of the increased evaluation for the sake of convenience. The claim for a higher rating for hearing loss has also been characterized as two issues, to include the propriety of a reduction made during the course of the appeal. 

The issues of entitlement to service connection for depression, Meniere's disease claimed as dizziness, TBI on a de novo basis, and whether new and material evidence has been submitted to reopen the claim for service connection for bilateral leg paralysis, formerly claimed as a bilateral leg disability, are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The current existence of a neck scar is not demonstrated. 

2. The Veteran's initial claims for service connection for a low back disability and dermatophytosis were denied in a May 1984 rating decision; he did not initiate an appeal of this decision and it is final. 

3. The Veteran's initial claim for service connection for a cervical spine disability was denied in an August 1987 rating decision; although he submitted a notice of disagreement with this decision, he did not perfect his appeal by submitting a timely substantive appeal and the rating decision is final. 

4. The Veteran's most recent attempt to reopen his claims for service connection for a back disability and a neck disability were denied in an April 2005 Board decision. 

5. Evidence received regarding the Veteran's low back and cervical spine disabilities since April 2005 is cumulative in that it merely shows continued treatment, and does not relate either the low back disability or cervical spine disability to active service or the one year presumptive period following discharge from service. 

6. The Veteran's most recent attempt to reopen his claim for service connection for dermatophytosis was denied in an unappealed June 2002 rating decision, which is final. 

7. The evidence received since June 2002 fails to show any current diagnosis of or new lay evidence of dermatophytosis or residuals of the dermatophytosis that was treated during service. 

8. The Veteran's initial claim for service connection for tinnitus was denied in a July 2006 rating decision; he did not initiate an appeal of this decision and it is final. 

9. Evidence received since the July 2006 rating decision does not contain any objective evidence or new lay evidence that relates the Veteran's tinnitus to either active service or his service connected hearing loss. 

10. The Veteran's initial claim for service connection for the residuals of a head injury was denied in a June 2002 rating decision; he did not initiate an appeal of this decision and it is final. 

11. Evidence received since the June 2002 rating decision includes a diagnosis of TBI, and a medical opinion that relates this disability to the head injury sustained during active service. 

12. Prior to August 22, 2008, the Veteran's headaches occurred on a daily basis but were not prostrating. 

13. As of August 22, 2008, the Veteran's headaches were productive of several prostrating attacks each month, but not productive of prolonged attacks or severe economic inadaptability. 

14. As of January 25, 2010, the evidence demonstrates that the Veteran experiences frequently prostrating headaches with prolonged attacks productive of severe economic inadaptability. 

15. The Veteran's 10 percent evaluation for hearing loss was assigned effective September 20, 1995, and the reduction was proposed in May 2008. 

16. The reduction in the 10 percent evaluation for hearing loss to zero percent was based on a single examination, and the evidence as a whole does not demonstrate sustained improvement. 

17. The Veteran currently meets the criteria for an exceptional pattern of hearing, and has level IV hearing loss for each ear under these criteria. 


CONCLUSIONS OF LAW

1. A scar of the neck was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 5107(b) (West 2002); 38 C.F.R. § 3.303 (2011). 

2. The April 2005 Board decision that most recently denied the Veteran's request to reopen a claim for service connection for a lumbar spine disability is final; evidence received since April 2005 is not new and material. 38 U.S.C.A. § 7104(b) (West 2002); 38 C.F.R. §§ 3.156(a), 20.1105 (2011). 

3. The April 2005 Board decision that most recently denied the Veteran's request to reopen a claim for service connection for a cervical spine disability is final; evidence received since April 2005 is not new and material. 38 U.S.C.A. § 7104(b) (West 2002); 38 C.F.R. §§ 3.156(a), 20.1105 (2011). 

4. The June 2002 rating decision that most recently denied the Veteran's request to reopen a claim for service connection for dermatophytosis is final; evidence received since June 2002 is not new and material. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104, 3.156(a) (2011). 

5. The July 2006 rating decision that denied the Veteran's claim for service connection for tinnitus is final; evidence received since July 2006 is not new and material. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104, 3.156(a) (2011).

6. The June 2002 rating decision that denied the Veteran's claim for service connection for the residuals of a head injury is final, but evidence received since June 2002 is new and material and his claim, which is now characterized as service connection for TBI, is reopened. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104, 3.156(a) (2011).

7. The criteria for an evaluation in excess of 10 percent for headaches were not met prior to August 22, 2008. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.10, 4.20, 4.124a, Code 8100 (2011). 

8. The criteria for an evaluation in excess of 30 percent for headaches were not met during the period from August 22, 2008 to January 24, 2010. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.10, 4.20, 4.124a, Code 8100 (2011). 

9. The criteria for a 50 percent evaluation for headaches have been met as of January 25, 2010. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.10, 4.20, 4.124a, Code 8100 (2011). 

10. The reduction in the evaluation of the Veteran's hearing loss from 10 percent to zero percent for the period from May 1, 2009 to July 19, 2010 was not proper. 38 C.F.R. §§ 3.344, 4.85, 4.85, Code 6100 (2011). 

11. Entitlement to an evaluation in excess of 10 percent for hearing loss is not warranted for any portion of the period on appeal. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 4.7, 4.10, 4.85, 4.86, Code 6100 (2011). 




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2009); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). 

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2002); C.F.R. § 3.159(b)(1) (2011). Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In Pelegrini, the United States Court of Appeals for Veterans Claims (Court) held that VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable adjudication by the RO. 

The Court has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) veteran status; 2) existence of a disability; 3) a connection between the veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The Court held that upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. Additionally, this notice must inform a claimant that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. 

Several of these issues include requests to reopen previously denied claims for service connection by submitting new and material evidence. In the context of a claim to reopen, VCAA notice must include an explanation of 1) the evidence and information necessary to establish entitlement to the underlying claim for the benefit sought; and 2) what constitutes new and material evidence to reopen the claim as determined by the evidence of record at the time of the previous final denial. See Kent v. Nicholson, 20 Vet. App. 1, (2006). The Court further explained that a notice letter must describe what evidence would be necessary to substantiate the element or elements required to establish the underlying claim that were found insufficient in the previous denial. 

In this case, the Veteran was provided with a letters in March 2006, December 2007, January 2008, and November 2009 that contained all of the notification required by 38 C.F.R. § 3.159, as defined by Dingess and Pelegrini. They also contained the notice required by Kent for the new and material evidence claims, with the exception of the TBI claim. As the Board will reopen and remand the TBI claim, there is no harm to proceed with adjudication without additional delay. These letters was provided to the Veteran prior to the initial adjudication of his various claims. 

In regards to the claim for an increased evaluation for headaches, the Board notes that this appeal arises from disagreement with the initial evaluation following the grant of service connection. The courts have held that once service connection is granted the claim is substantiated, additional VCAA notice is not required; and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Nevertheless, the Veteran was provided with a notice letter for the claim for service connection for headaches in March 2006. The Board concludes that the duty to notify has been met. 

The Board further concludes that the duty to assist has also been met. The Veteran's service treatment records have been obtained. Private medical records and VA treatment records have been obtained. The Veteran has declined his right to a hearing, but he has offered relevant testimony in regards to some of his disabilities at hearings conducted with previous claims. He was afforded appropriate and adequate VA examinations, and relevant opinions have been obtained from the examiners after a review of the claims folder. There is no indication that there is any relevant evidence outstanding in these claims, and the Board will proceed with consideration of the Veteran's appeal.

Service Connection

The Veteran argues that he has developed many disabilities as a result of active service. He attributes most of these disabilities either to injuries he sustained in a fall during service, or argues that he later developed several disabilities secondary to the injuries he sustained at that time. 

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires (1) evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b).

Lay persons are generally not competent to opine as to medical etiology or render medical opinions. Barr v. Nicholson; see Grover v. West, 12 Vet. App. 109, 112 (1999); Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). Lay testimony is competent, however, to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." ; see also Falzone v. Brown, 8 Vet. App. 398, 405 Layno v. Brown, 6 Vet. App. 465, 469 (1994) (1995) (lay person competent to testify to pain and visible flatness of his feet); Espiritu, 2 Vet. App. at 494-95 (lay person may provide eyewitness account of medical symptoms). 

The Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical profession." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence."

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted").

If degenerative arthritis becomes manifest to a degree of 10 percent within one year of separation from active service, then it is presumed to have been incurred during active service, even though there is no evidence of arthritis during service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

A disorder may be service connected if the evidence of record, regardless of its date, shows that the veteran had a chronic disorder in service or during an applicable presumptive period, and that the veteran still has such a disorder. 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488, 494-95 (1997). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b). 

Scar on the Neck

A review of the service treatment records is negative for a scar located on the Veteran's neck. The December 1965 separation examination listed three scars on various parts of the Veteran's head and body. A scar on the neck was not included. 

Following discharge, the Veteran was afforded a VA examination in conjunction with his initial claims for service connection. An examination of the head, face, and neck noted a scar on the left frontal region and a scar of the occipital region. A scar on the neck was not identified. At this juncture, the Board notes that service connection has already been established for the two scars described on this examination. 

The remaining post service medical records are also negative for a scar of the neck. The Veteran was afforded a VA examination of his scars in conjunction with a claim for an increased evaluation of his service connected scars in January 2007. The examination specifically noted that it was of the face and neck, but a scar on the neck was not identified. 

The Board finds that entitlement to service connection for a neck scar is not merited. Service treatment records do not document a cutting injury to the neck in service, a neck scar was not among the scars described at discharge from service, and there is no credible evidence to confirm the existence of a current neck scar. The Veteran's contention that he has a neck scar is clearly incredible as upon physical examination there was no evidence of a scar identified. The Board notes that the existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. §§ 1110, 1131 (West 1991); see Degmetich v. Brown, 104 F.3d 1328 (1997). As there is no evidence to demonstrate the existence of a current disability, much less that it was incurred due to service, service connection is not warranted. 

New and Material

The Board notes that several of the Veteran's claims for service connection include disabilities for which service connection has previously been denied. 

A veteran may reopen a finally adjudicated claim by submitting new and material evidence. New evidence is defined as existing evidence not previously submitted to the VA, and material evidence is defined as existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

With respect to the issue of materiality, the newly presented evidence need not be probative of all the elements required to award the claim as in this case dealing with a claim for service connection. Evans v. Brown, 9 Vet. App. 273, 284, (1996) (citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd 78 F.3d 604 (Fed. Cir. 1996) (table)). The newly presented evidence is presumed to be credible for purposes of determining whether or not it is new and material. Savage v. Gober, 10 Vet. App. 488 (1997). 

The United States Court of Veterans Appeals (Court) has stated that for the purpose of determining whether or not new and material evidence has been presented to reopen a claim, the evidence for consideration is that which has been presented or secured since the last time the claim was finally disallowed on any basis, and not only since the last time it was disallowed on the merits. Evans v. Brown, 9 Vet. App. 273, 285 (1996). 

The Board notes that the Veteran has not been provided with VA examinations for many of the disabilities for which he seeks service connection. The Court has held that VA need not conduct an examination with respect to previously denied claims, because the duty under 38 C.F.R. § 3.159(c)(4) applies to a claim to reopen only if new and material evidence is presented or secured. Paralyzed Veterans of America v. Secretary of Veterans Affairs, 345 F.3d 1334 (Fed. Cir. 2003) (holding that VA need not provide a medical examination or medical opinion until a claim is reopened). 

Cervical and Lumbar Spine Disabilities

The Veteran was notified in July 1984 of a May 1984 RO rating decision denying service connection for a back disorder. He did not initiate an appeal of that decision by filing a timely notice of disagreement. 

In August 1987 the Veteran was notified of a rating decision that same month denying service connection for a cervical spine disorder. After submitting a timely notice of disagreement in July 1988, in response, the RO sent him a statement of the case in September 1988. However, the Veteran then failed to file a timely substantive appeal (e.g., a VA Form 9 or equivalent statement) to "perfect" an appeal to the Board concerning this specific claim. 

While a VA Form 9 was received in May 1991, that was not until after the appeal period had expired. See 38 C.F.R. § 20.302 (2011). Consequently, those decisions became final and binding on the Veteran based on the evidence then of record. See 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.104(a), 20.200, 20.1103 (2011). 

The Veteran has attempted to reopen his claims on several occasions. The most recent attempt was denied in an April 2005 Board decision, which determined that the Veteran had not submitted new and material evidence to reopen his claims for service connection for a neck disorder or a back disorder. The Veteran did not appeal this decision to the Court, and it is final. 38 U.S.C.A. § 7104(b); 38 C.F.R. § 20.1105. 

The evidence considered by the May 1984 rating decision that denied entitlement to service connection for a back disability included the Veteran's service treatment records, the report of an August 1968 VA examination, and VA treatment records dating through 1983. This evidence showed no more than acute low back symptoms during service and the discharge examination was negative. The Veteran had complained of low back pain when he sought VA treatment in the 1970s, but X-rays did not reveal any lumbosacral pathology. In denying the claim for service connection, the decision specifically noted that the August 1968 VA examination had been negative for a back disability. 

The evidence considered by the August 1987 rating decision that denied entitlement to service connection for a cervical spine disability also included the service treatment records, the report of the August 1968 VA examination, and VA treatment records dating through 1983. Furthermore, private medical records indicating that the Veteran had sustained an additional injury to his lumbar spine in 1980 were submitted. The decision determined that any complaints pertaining to the spine in service involved acute symptoms, and that current findings were not related to service. 

Basically, the reason for the denial of service connection for both the Veteran's claimed back disability and neck disability is that any current disability is not related to complaints or injuries during service. For evidence to be considered new and material, it must purport to demonstrate such a relationship. 

The evidence submitted by the Veteran since the most recent denial of his claims in the April 2005 Board decision includes both private and VA medical records that show ongoing treatment for his back and neck disabilities. These records include medical records pertaining to a 1979 fall at a work related accident that resulted in back and neck pain. An August 2005 private treatment note refers to a history of back pain since 1964 in the portion of the evaluation report entitled "subjective". A September 2005 private magnetic resonance imaging study shows protruding discs at both the lumbar and cervical levels. However, none of these records contain medical evidence indicating either the Veteran's back disability or neck disability are related to active service. Also, it has always been the Veteran's contention that his neck and back disabilities are related to service so the lay evidence does not constitute new evidence of a lay indication, including subjective history, that the disorders are related to service. 

In essence, all of the records pertaining to the Veteran's back and neck disabilities show nothing more than continued treatment for disabilities that were acknowledged to exist by the previous decisions. The Board notes that records related to continued treatment are generally insufficient to reopen a claim for service connection. 38 C.F.R. § 3.156. See also Cornele v. Brown, 6 Vet. App. 59, 62 (1993) (medical evidence which merely documents continued diagnosis and treatment of disease, without addressing other crucial matters, such as medical nexus, does not constitute new and material evidence). The exception is the 1979 records showing treatment following a work related injury. These records do not mention any previous disability of the back or neck. 

In sum, the additional evidence at best relies on subjective histories related by the Veteran himself, which were considered and rejected by the previous rating decisions and Board decision. The additional evidence in question does not tend to show that any current lumbosacral or cervical pathology is of service origin or that degenerative joint disease manifested within one year of service. The evidence is not new and material and the Veteran's claims may not be reopened. 



Dermatophytosis

Entitlement to service connection for dermatophytosis was initially denied in the same final May 1984 rating decision that denied entitlement to service connection for the back disability. The Veteran's attempt to reopen his claim was denied by a June 2002 rating decision, which found that he had not submitted new and material evidence. He did not submit a notice of disagreement with this decision, and it is final. 38 U.S.C.A. § 7105; 38 C.F.R. § 3.104. 

The evidence considered by the May 1984 rating decision included the Veteran's service treatment records, the report of an August 1968 VA examination, and VA treatment records dating through 1983. The decision noted that the Veteran had been treated for dermatophytosis of the feet in 1964. However, his claim was denied on the basis that post service medical records failed to show any current diagnosis of this disability. The June 2002 rating decision also declined to reopen the Veteran's claim on the basis that there was no current evidence of the disability. 

The evidence received since June 2002 consists of several volumes of VA and private medical records. However, none of these records contain a diagnosis of dermatophytosis. Also, it has always been the Veteran's contention that he has dermatophytosis related to service so the lay evidence does not constitute new evidence of recurrent or persistent symptoms of dermatophytosis. As the basis for the previous denials was the lack of a current diagnosis of dermatophytosis, and as none of the evidence received since those denials contains new evidence of such a diagnosis or symptoms, none of the evidence is material, and the Veteran's claim may not be reopened. 

Tinnitus

Entitlement to service connection for tinnitus was initially denied in a July 2006 rating decision. The Veteran was notified of this decision and provided with his appellate rights in a letter dated that same month. He did initial an appeal of this decision by submitting a notice of disagreement, and it is final. 38 U.S.C.A. § 7105; 38 C.F.R. § 3.104.

The evidence considered by the July 2006 rating decision included the Veteran's service treatment records, the report of a May 2006 VA examination for ear disease, and VA and private medical records. The Board notes that the service treatment records are negative for tinnitus. His ears were normal in the December 1965 discharge examination. He answered "no" to a history of ear, nose, and throat trouble on a Report of Medical History obtained at that time. The Veteran also denied tinnitus on a December 1995 VA examination. The May 2006 examiner noted that tinnitus is a subjective symptom. While tinnitus could be present based on the Veteran's current hearing loss, the examiner was unable to determine how far back the tinnitus started, so the examiner opined that tinnitus was less likely as not the result of hearing loss during active duty. The July 2006 rating decision denied service connection based on the May 2006 VA examiner's opinion. 

The evidence submitted since July 2006 includes the report of a VA audio examination conducted in March 2008. The claims folder was reviewed by the examiner, although the examiner's comments on the records reviewed did not include any regarding tinnitus. In the tinnitus section of the pre-printed examination report, the Veteran was noted to have a history of bilateral tinnitus that was not constant but was recurrent. The date and circumstances of the onset of tinnitus were since 1964, after a head trauma. The end of this report contains a section asking "Was a medical opinion requested?" The answer to this was "no". 

The Veteran also underwent an additional VA examination in July 2010. The examiner stated that the Veteran did not have a current claim for tinnitus and that he did not have a current complaint of tinnitus. 

The basic reason for the denial of service connection for tinnitus is that the Veteran's current complaints are subjective and were not the result of his service connected hearing loss in service. Therefore, in order to be new and material, the evidence must relate the Veteran's current complaints of tinnitus to either active service or to his service connected hearing loss. 

The Board finds that the Veteran has not submitted new and material evidence to reopen his claim for service connection for tinnitus. There are two additional items of evidence that address the Veteran's tinnitus. The Veteran apparently denied tinnitus on the July 2010 examination, so this item is clearly not material. 

The other item is the report of the March 2008 VA examination. At first, this appears to contain a statement linking the Veteran's tinnitus to his head injury in service. However, a closer examination of the report shows that this is once again a subjective history related by the Veteran. This is apparent because in the portion of the report reserved for opinions, the examiner indicated that there were none requested. This history was considered and rejected by the previous rating decision, and the Veteran's general theory of a connection between tinnitus and head trauma does not constitute new and material evidence. In the absence of a medical indication or new lay evidence relating the Veteran's tinnitus to either active service or his service connected hearing loss, the evidence is not new and material and the claim may not be reopened. 

Traumatic Brain Injury

The record reflects that entitlement to service connection for the residuals of a head injury was initially denied in the June 2002 rating decision. As previously noted, he did not submit a notice of disagreement with this decision, and it is final. 38 U.S.C.A. § 7105; 38 C.F.R. § 3.104.

The evidence considered by the June 2002 rating decision included the Veteran's service treatment records, an August 1968 neurology consultation, and VA and private examinations and treatment records dating 2000. Service connection was denied on the basis that although there was a record of treatment for a head injury in service, no permanent residual or chronic disability subject to service connection was shown in the service treatment records or demonstrated by the evidence following service. 

The evidence received in conjunction with the Veteran's current claim includes the report of a private psychiatric evaluation conducted in October 2011. The examiner stated that he had reviewed the relevant portion of the claims file, including service and post-service medical records. At the conclusion of the examination, the doctor included a diagnosis of TBI. He also opined that it was more probable than not that that this condition was directly related to the trauma in service. 

The Board notes that a diagnosis was not of record at the time of the June 2002 rating decision. As that denial was based on the absence of a current diagnosis that could be related to the Veteran's head injury in service, the Board finds that the October 2011 opinion is both new and material, and his claim for service connection for TBI is reopened. 

The issue of entitlement to service connection for TBI on a de novo basis will be addressed in the remand portion of this decision. 

Increased Evaluation

The Veteran contends that the initial evaluation assigned to his service connected headaches is insufficient to reflect the level of impairment it produces. In addition, he argues that his hearing loss is more severe than is reflected by the current 10 percent rating. 

The evaluation of service-connected disabilities is based on the average impairment of earning capacity they produce, as determined by considering current symptomatology in the light of appropriate rating criteria. 38 U.S.C.A. § 1155. Consideration is given to the potential application of the various provisions of 38 C.F.R. Parts 3 and 4, whether or not they are raised by the veteran, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In addition, the entire history of the veteran's disability is also considered. Consideration must be given to the ability of the veteran to function under the ordinary conditions of daily life. 38 C.F.R. § 4.10. 

If there is a question as to which of two evaluations should apply, the higher rating is assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is assigned. 38 C.F.R. § 4.7.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). The Board acknowledges that a claimant may experience multiple degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

The Veteran's claim for a higher evaluation for his headaches involves his dissatisfaction with the initial rating for this disability assigned following the grant of service connection. The Court has found that there is a distinction between a Veteran's disagreement with the initial rating assigned following a grant of service connection, and the claim for an increased rating for a disability in which entitlement to service connection has previously been established. In instances in which the Veteran disagrees with the initial rating, the entire evidentiary record from the time of the Veteran's claim for service connection to the present is of importance in determining the proper evaluation of disability, and staged ratings are to be considered in order to reflect the changing level of severity of a disability during this period. Fenderson v. West, 12 Vet. App. 119 (1999). 




Headaches

The record indicates that entitlement to service connection for chronic recurring headaches was established in a July 2006 rating decision. A 10 percent evaluation was assigned for this disability, effective from January 20, 2006. This evaluation was increased to the current 30 percent rating, effective from August 22, 2008. 

The rating code does not contain an entry for chronic recurring headaches. When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20. The Veteran's recurring headaches have been rated by analogy to migraine headaches. 

Migraine headaches which are very frequently completely prostrating with prolonged attacks productive of severe economic inadaptability are evaluated as 50 percent disabling. Characteristic prostrating attacks occurring on an average of once a month over the last several months are evaluated as 30 percent disabling. Characteristic prostrating attacks averaging one in two months over the last several months merits continuation of the 10 percent evaluation now in effect. 38 C.F.R. § 4.124a, Code 8100. 

The evidence includes VA treatment records dating January 2006 and February 2006. These do not show any complaints pertinent to headaches. 

The Veteran was afforded a May 2006 VA neurological examination for headaches. In relevant part, this examination noted that the Veteran had on and off almost daily headaches, described as pressure without any precipitant factor. The pain was described as 8 on a scale to 10, and would last the entire day. He had learned to live with the headache and could continue ordinary activity without being prostrated. He was not currently working. 

VA treatment records dating for the remainder of 2006 and 2007 do not contain complaints or treatment regarding headaches. However, a July 2007 private record shows that he was treated at a hospital for complaints that included vomiting, nausea and a headache. He was seen for complaints that included headaches again in August 2007. 

The Veteran underwent an additional VA neurological examination on August 22, 2008. The history of headaches was noted, and their course since onset was described as progressively worse. The frequency of his headaches during the past 12 months was weekly. Most of these attacks were stated to be prostrating. The diagnosis was recurrent mixed muscle contraction headaches with vascular features. The examiner opined that there were severe effects on all of the Veteran's usual daily activities, but these limitations were present only during prostrating episodes. 

VA treatment records dating August 24, 2009 show that the Veteran reported to the clinic with complaints of headaches for many months that had worsened the last week. 

At a January 25, 2010 VA examination for TBI, the Veteran described pain in the occipital region and the back of the neck, described as oppressive and occurring on a daily basis. The headache was prostrating and required the daily use of analgesics with partial relief. 

The Board finds that the evidence does not support entitlement to an evaluation in excess of 10 percent for headaches prior to August 22, 2008. Neither the May 2006 VA examination nor the Veteran's private treatment records from 2007 demonstrate that he experienced prostrating headaches during this period. Although the Veteran reported nearly daily headaches, he was able to continue with ordinary activity. While the 2007 treatment records show that he was seen for headaches in July and August, they also reflect that his visits were for symptoms in addition to headaches. These records do not indicate that the headaches were prostrating. Therefore, in the absence of evidence that demonstrates the Veteran's symptoms more nearly resembled prostrating attacks occurring on an average of once a month over the last several months, the criteria for an evaluation of 30 percent or more have not been met for this period. 38 C.F.R. §§ 4.7, 4.124a, Code 8100. The Board notes that the examination findings were based on the lay reports and correlated medical conclusions of the examiner. 

The Board further finds that the evidence does not support entitlement to an evaluation in excess of 30 percent for headaches as of August 22, 2008. The evidence demonstrates that the Veteran's headaches now occurred on a weekly basis, and most were said to be prostrating. The examiner noted that this resulted in severe limitations on all the Veteran's usual daily activities, but only during the headaches. Although this demonstrates that the Veteran was likely experiencing several prostrating headaches that were usually prostrating every month, this does not equate to the prolonged attacks or severe economic inadaptability necessary for a 50 percent evaluation. 38 C.F.R. §§ 4.7, 4.124a, Code 8100. Again, the Board notes that the examination findings were based on the lay reports and correlated medical conclusions of the examiner. 

However, the January 25, 2010 VA examination for TBI found that the Veteran was now experiencing daily prostrating headaches. The Board finds that this equates to prolonged attacks, and given the finding of severe impairment during attacks noted on the August 2008 examination, it also equates to severe economic inadaptability. Therefore, the Board concludes that a 50 percent evaluation for headaches is warranted as of January 25, 2010. 38 C.F.R. § 4.124a, Code 8100.

The Board has considered entitlement to an evaluation in excess of 50 percent for headaches, but this is the highest rating allowable under the rating code. The Board has also reviewed other potentially applicable rating codes under 38 C.F.R. § 4.124a but finds that there are none that more fully address the Veteran's symptoms of prostrating headaches. Extraschedular considerations will be addressed below. 

Hearing Loss

Entitlement to service connection for bilateral hearing loss was granted by an April 2005 Board decision. This was implemented by an April 2005 rating decision that assigned a 10 percent evaluation for the Veteran's disability with an effective date of September 20, 1995. 

The Veteran's current claim was received in May 2007. A May 2008 rating decision proposed to reduce the evaluation for bilateral hearing loss to zero percent. The reduction was made effective May 1, 2009. A December 2010 rating decision issued during the course of this appeal again assigned a 10 percent evaluation, but effective from only July 19, 2010. 

Under the regulation and rating codes for the evaluation of hearing loss, an examination for hearing impairment must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test. Examinations are to be conducted without the use of hearing aids. To evaluate the degree of disability from defective hearing, the rating schedule establishes 11 auditory acuity levels from Level I for essentially normal acuity through Level XI for profound deafness. These are assigned based on a combination of the percent of speech discrimination and the pure tone threshold average, as contained in a series of tables within the regulations. The pure tone threshold average is the sum of the pure tone thresholds at 1000, 2000, 3000, and 4000 Hertz, divided by four. 38 C.F.R. § 4.85. In order to receive a 10 percent evaluation or higher, the better ear must be at level III or higher, while at the same time the poorer ear must be at level IV or higher. There are various combinations that allow an evaluation of 20 percent or more, but these all require that the better ear be at level IV or higher while the poorer ear is at level V or higher. See 38 C.F.R. § 4.86, Table VII.

For special cases, when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz ) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately. When the pure tone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86. 

The evidence includes the report of a March 2008 VA examination. This showed that the Veteran had pure tone thresholds of 55, 50, 50, and 55 decibels for the right ear at the frequencies of 1000, 2000, 3000, and 4000 Hertz. The left ear had pure tone thresholds of 50, 45, 50, and 55 decibels at these same frequencies. The average threshold was 52.5 decibels for the right ear and 50 decibels for the left ear. Speech recognition scores were 96 percent for each ear. This translates to Level I hearing for each ear which, when applied to C.F.R. § 4.85, Table VII, results in a zero percent evaluation. 

A private audiological examination was conducted in June 2008. This examination is inadequate for rating purposes, as the pure tone threshold at 3000 Hertz is not recorded for either ear, there is no indication which frequencies were utilized to find the pure tone average, and there is no indication that the word recognition testing was based on the Maryland CNC, as is required by regulation. A private audiological examination conducted in October 2009 is similarly flawed, in that there is no indication the word recognition testing was based on the Maryland CNC. There, however, are contemporaneous examinations so there is no need to seek a clarification of opinion. See Savage v. Shinseki, No. 09-4406, 2011 WL 13796, at *10 (Vet. App. January 4, 2011).

The Veteran underwent an additional VA examination in July 2010. He had pure tone thresholds of 60, 55, 65, and 60 decibels for the left ear at the frequencies of 1000, 2000, 3000, and 4000 Hertz. The right ear had pure tone thresholds of 60, 55, 60, and 60 decibels at these same frequencies. The average threshold was 60 decibels for the left ear and 59 decibels for the right ear. Speech recognition using the Maryland CNC word list was 88 percent for the left ear and 90 percent for the right ear. This is an exceptional pattern of hearing under 38 C.F.R. § 4.86, and the Veteran has level IV hearing in each ear under C.F.R. § 4.85, Table VIa. This equates to a 10 percent rating under C.F.R. § 4.85, Table VII. 

At this juncture, the Board must address whether or not the reduction of the evaluation for the Veteran's hearing loss from 10 percent to zero percent was proper. 

Where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefore, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. If additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. 38 C.F.R. § 3.105(e). 

The Board notes that the evidence does not indicate, nor does the Veteran contend, noncompliance with the procedural requirements for rating reductions. A May 2008 rating decision included a proposal to reduce the evaluation for hearing loss from 10 percent to zero percent. The Veteran was notified of this proposed reduction in a May 2008 letter and notified he had 60 days to respond. The rating decision that decreased the evaluation to zero percent was not issued until February 2009, and the Veteran was notified of this action in a letter dated February 26, 2009. The effective date of the reduction was not until May 1, 2009. Therefore, the procedural requirements for a reduction were met, and the Board will now focus on the propriety of the reduction. See 38 C.F.R. § 3.105(e). 

The provisions of 38 C.F.R. § 3.344(a) and (b) are applicable in rating reductions for disabilities that have "stabilized" over a five-year period. In such cases, the evidence of record at the time of the reduction decision must demonstrate a sustained and material improvement based on the entire record of pertinent medical evidence. Lehman v. Derwinski, 1 Vet. App. 339 (1991). Moreover, if the evidence of record casts a doubtful shadow upon a reduction in the rating decision, then the proposed reduction will be suspended for one to two years until a reexamination is performed; the RO will re-interpret the record in light of the Veteran's entire medical history, with emphasis upon the most recent history. 

Ratings on account of disease subject to temporary or episodic improvement will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. Moreover, though material improvement in the physical or mental condition is clearly reflected, the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344. In essence, a rating that has existed for five years or more is considered stable, and may not be reduced on any one examination, unless all the evidence of record establishes that a claimant's condition has undergone sustained material improvement. 38 C.F.R. § 3.344. 

In this case, the Veteran's 10 percent evaluation had been effective from September 20, 1995, and the reduction was proposed in May 2008. Therefore, the provisions of 38 C.F.R. § 3.344(a) and (b) are applicable. 

The Board finds that based on the evidence of record, the reduction in the evaluation of the Veteran's hearing loss from 10 percent to zero percent was not proper. Although the 10 percent evaluation had been in effect for over seven years, the reduction was based on only a single March 2008 VA examination. It should be noted that the very next VA examination in July 2010 again demonstrated that a 10 percent evaluation was warranted. The record also shows that examiners on previous VA hearing examinations note that the Veteran's first language is Spanish, and referred to a language barrier in the testing which might have affected the accuracy. These factors call into question the accuracy of the March 2008 examination. When taken as a whole, the evidence did not demonstrate sustained improvement in the Veteran's hearing, and the reduction was improper. 38 C.F.R. § 3.344. 

However, the Board also finds that the evidence does not support entitlement to an evaluation in excess of 10 percent for the Veteran's hearing loss for any portion of the period on appeal. As has been demonstrated, the March 2008 VA examination showed level I hearing for each ear. This does not support even a 10 percent evaluation, and thus cannot be the basis for an evaluation of greater than 10 percent. The only other examination of record that is sufficient for rating purposes is the July 2010 VA examination. Based on the findings of this examination that all of the pure tone thresholds were 55 decibels or higher, the Board notes that it is more favorable to the Veteran to evaluate him under the provisions for exceptional patterns of hearing. The Veteran has level IV hearing for each ear under these provisions, which equates to a 10 percent rating under C.F.R. § 4.85, Table VII, Code 6100. There are no examinations sufficient for rating purposes that support a higher rating. 

In reaching this decision, the Board has considered the Veteran's credible lay belief that his hearing loss has increased. However, the medical evidence clearly weighs against the assignment of a compensable evaluation in this case. The requirements of 38 C.F.R. § 4.85 set out the percentage ratings for exact numerical levels of impairment required for a compensable evaluation of hearing loss. The evaluation of hearing loss is reached by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Therefore, the only possible interpretation of the most recent evidence is that the Veteran's hearing loss is at level IV under the exception pattern of hearing for each ear, and that, therefore, an evaluation in excess of 10 percent is not warranted. 

Extraschedular Considerations

Finally, the Board had considered entitlement to an extraschedular evaluation, but finds that one is not merited in this case. The Board finds that the record does not reflect that the Veteran's disabilities are so exceptional or unusual as to warrant the assignment of a higher rating on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008).

In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id. Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation as "governing norms", which include marked interference with employment and frequent periods of hospitalization. 38 C.F.R. § 3.321(b)(1).

In this case, the Board finds that the rating criteria to evaluate the Veteran's service-connected disabilities reasonably describe his disability levels and symptomatology and he has not argued to the contrary. The criteria, reasonably describe the Veteran's disability level and symptomatology for both his headaches and his hearing loss. Consequently his disability level is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate. For these reasons, the Veteran's disability picture is contemplated by the rating schedule and no extraschedular referral is required. 38 C.F.R. § 3.321(b)(1); Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995). 


ORDER

Entitlement to service connection for a scar on the neck is denied. 

New and material evidence has not been submitted to reopen a claim for service connection for a cervical spine disability; the appeal is denied. 

New and material evidence has not been presented to reopen a claim for service connection for a lumbar spine disability; the appeal is denied. 

New and material evidence has not been presented to reopen a claim for service connection for dermatophytosis; the appeal is denied. 

New and material evidence has not been presented to reopen a claim for service connection for tinnitus; the appeal is denied.

New and material evidence has been presented to reopen a claim for service connection for traumatic brain injury; to this extent only his appeal is granted. 

Entitlement to an initial evaluation in excess of 10 percent for headaches prior to August 22, 2008 is denied. 

Entitlement to an evaluation in excess of 30 percent for headaches from August 22, 2008 to January 24, 2010 is denied. 

Entitlement to a 50 percent evaluation for headaches from January 25, 2010 is granted, subject to the laws and regulations governing the award of monetary benefits. 

A 10 percent evaluation for hearing loss for the period from May 1, 2009 to July 19, 2010 is restored; to this extent the appeal is granted. 

Entitlement to an evaluation in excess of 10 percent for bilateral hearing loss is denied. 


REMAND

The Veteran contends that he has developed depression secondary to his service connected disabilities. 

A disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a) (2011). 

Secondary service connection may also be established for a nonservice-connected disability which is aggravated by a service connected disability. In this instance, the veteran may be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439 (1995). 

The Veteran was afforded a VA psychiatric examination in February 2008. The diagnosis was a depressive disorder not otherwise specified. The examiner opined that this depressive disorder is not caused by or a result of service connected bilateral hearing loss or chronic headaches. However, the reasons and bases provided for this opinion do not relate to secondary service connection. Instead, the examiner explains that the Veteran did not have a psychiatric disability in service or until several years after service, and that he did not pursue psychiatric treatment until 2001. There is no discussion as to why or why not the service connected disabilities did not cause the depressive disorder, and aggravation was not addressed. 

The Veteran has submitted an October 2011 private psychiatric examination in support of his claim. The diagnosis included depressive disorder secondary to chronic pain (headache). The examiner opined that the Veteran's depressive disorder was more likely than not related to his chronic headaches. In reaching this conclusion, he referenced a July 2004 VA record stating the Veteran's depression is directly related to chronic pain. However, while these VA records note that the Veteran's depression is pain related the source of the pain was the Veteran's non-service connected disabilities of the cervical and lumbar spine. Headaches were not mentioned. The October 2011 examiner does not discuss or even note the Veteran's back pain. 

In view of the problems with both the VA and private psychiatric examinations, the Board finds that the Veteran should be scheduled for an additional VA examination in order to determine whether or not his service connected headaches or hearing loss caused or aggravated his depressive disorder. 

In regards to the Veteran's claim for service connection for Meniere's disease claimed as dizziness, the Board notes that the claim was denied on the basis that the February 2008 VA examination found that the Veteran did not have a diagnosis of Meniere's. However, the Board notes that private medical records dated March 2007 do contain a diagnosis of Meniere's disease. More importantly, while the Veteran's claim has been developed as a claim for Meniere's, his contentions show that he is seeking service connection for a disability manifested by dizziness, regardless of the cause. In that regard, the Board notes that September 2007 VA testing demonstrates that the Veteran has abnormal oculomotor findings suggestive of the presence of pathology involving the central nervous system at the vestibule-ocular pathways. This finding was noted on the February 2008 examination, as were the Veteran's symptoms of dizziness. However, it was not noted if this finding was either the result of the head trauma sustained in service or secondary to a service connected disability. The Board finds that the Veteran should be scheduled for an additional examination by an otolaryngologist to determine the etiology of his dizziness. 

As for the Veteran's claim for TBI, the January 2010 VA examination found that the Veteran did not have a diagnosis of this disability. However, the explanation for this conclusion appears to focus on the lack of objective evidence of loss of consciousness following the head injury in service. The examiner further appears to dismiss the Veteran's current reports of a loss of consciousness, as well as the notation of such on the October 1968 VA examination report. 

The Board notes that the Veteran is competent to report observable symptomatology such as a loss of consciousness. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). His reports of a loss of consciousness were first recorded on the October 1968 neurological examination. This was long before the Veteran filed a claim in which loss of consciousness would be relevant. 

In contrast, the October 2011 private examination includes a diagnosis of TBI. However, this was based on a psychiatric examination and, as stated at the end of the report, a review of medical literature. There is no indication that the Veteran underwent any neurological examination or testing before this diagnosis was reached. Furthermore, this examiner does not note the Veteran's 1979 work related accident and any role it might have played in the development of TBI. 

Therefore, in view of the problems with both the VA and private psychiatric examinations, the Board finds that the Veteran should be scheduled for an additional VA neurological examination in order to determine whether or not he has TBI and, if so, whether or not it is related to the head trauma sustained during active service. 

Finally, in regards to the Veteran's claim for service connection for bilateral leg paralysis, the Board notes that similar claim addressing these same symptoms was denied by the Board in an April 2005 decision, which denied entitlement to service connection for a disorder of the legs. This claim is final, but may be reopened if new and material evidence is submitted. 38 U.S.C.A. § 7104(b); 38 C.F.R. § 20.1105. 

The Veteran's current claim has been developed and considered as if it is a new claim. The Board finds that this matter must be returned in order to provide the Veteran with the necessary notifications, and then to allow the claim to be considered on a new and material evidence basis. 

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with notification that new and material evidence is required to reopen his claim for service connection for a disability of the legs, now claimed as paralysis of the legs. This should include all notification regarding the basis for the prior denial as defined by Kent v. Nicholson, 20 Vet. App. 1, (2006). After the Veteran has been provided with this notification and afforded an opportunity to respond, adjudicate the claim and determine whether or not new and material evidence has been submitted to reopen the claim for service connection for a disability of the legs that was denied in the April 2005 Board decision. 

2. Schedule the Veteran for a VA psychiatric examination in order to determine the nature and etiology of his claimed depressive disorder. The claims folder must be forwarded to the examiner for use in the study of this case. All indicated tests and studies should be conducted. After the completion of the examination and review of the record, the examiner should attempt to express the following opinions:
a) Does the Veteran have a current diagnosis of a psychiatric disability? If so, what is this diagnosis?
b) If the Veteran has a current psychiatric disability, is it at least as likely as not that this disability was incurred in or aggravated by active service?
c) If the Veteran has a current psychiatric disability that was not directly incurred due to active service, is it at least as likely as not that it was incurred due to or aggravated (increased in severity beyond natural progression) by his service connected disabilities, in particular his headaches or hearing loss?
d) If it is determined that the Veteran has a psychiatric disability that was aggravated by his service connected disabilities, is it possible to determine the baseline severity of his psychiatric disability prior to aggravation? If so, describe this baseline, as well as the increase in symptomatology as a result of aggravation. 
The reasons and bases for all opinions should be provided. If the examiner finds that they are unable to express one or more of the requested opinions without resorting to speculation, the reasons and bases for that conclusion should be provided, and evidence that might enable the requested opinion to be provided should be identified. 

3. Schedule the Veteran for a VA examination by an otolaryngologist in order to determine the nature and etiology of his claimed disability manifested by dizziness. The claims folder must be forwarded to the examiner for use in the study of this case. All indicated tests and studies should be conducted. If necessary, a consultation with a neurologist or other relevant physician with knowledge in this matter should be made. After the completion of the examination and review of the record, the examiner should attempt to express the following opinions:
a) Does the Veteran have a current disability manifested by dizziness? If so, what is the cause and diagnosis of this disability? 
b) If the Veteran has a current disability manifested by dizziness, is it at least as likely as not that this disability was incurred in or aggravated by active service, to include the verified trauma to his head? 
c) If the Veteran has a current disability manifested by dizziness that was not directly incurred due to active service, is it at least as likely as not that it was incurred due to or aggravated (increased in severity beyond natural progression) by his service connected disabilities, in particular his headaches or hearing loss?
d) If it is determined that the Veteran has a disability manifested by dizziness that was aggravated by his service connected disabilities, is it possible to determine the baseline severity of this disability prior to aggravation? If so, describe this baseline, as well as the increase in symptomatology as a result of aggravation. 
The reasons and bases for all opinions should be provided. If the examiner finds that they are unable to express one or more of the requested opinions without resorting to speculation, the reasons and bases for that conclusion should be provided, and evidence that might enable the requested opinion to be provided should be identified. 

4. Schedule the Veteran for a VA neurological examination in order to determine the nature and etiology of his claimed traumatic brain injury. The claims folder must be forwarded to the examiner for use in the study of this case. For the purposes of this examination, the Veteran's report of having lost consciousness following the 1964 injury to his head during service is presumed to have occurred. All indicated tests and studies should be conducted. After the completion of the examination and review of the record, the examiner should attempt to express the following opinions. 
a) Does the Veteran have a diagnosis of TBI? 
b) If the Veteran has a current diagnosis of TBI, is it at least as likely as not that this disability was incurred in or aggravated by active service, to include the verified trauma to his head? 
The reasons and bases for all opinions should be provided. If the examiner reaches a different conclusion than that of the October 2011 private examiner, an attempt to explain and distinguish this difference should be provided. The effects of post service injuries sustained in 1979 and 1980 to TBI should be noted, if any. If the examiner finds that they are unable to express one or more of the requested opinions without resorting to speculation, the reasons and bases for that conclusion should be provided, and evidence that might enable the requested opinion to be provided should be identified. 

5. After the development requested above has been completed to the extent possible, the RO should again review the record. If any benefit sought on appeal, for which a notice of disagreement has been filed, remains denied, the Veteran and representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
TANYA A. SMITH
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs